**FIRST UNION NATIONAL BANK,**
Plaintiff–Appellant,

v.

**ARAB AFRICAN INTERNATION-
AL BANK and Emirates Bank In-
ternational, Defendants–Appellees.**

Nos. 01–7476(L), 01–7477(CON).

United States Court of Appeals,
Second Circuit.

April 22, 2002.

Oct. 9, 2002.

Mark L. LoSacco, LeBoeuf, Lamb,
Green & MacRae (Lawrence E. Miller, on
the brief), Newark, NJ, Appearing for Ap-
pellant.

David W. Rivkin, Debevoise & Plimpton,
New York, N.Y. (Suzanne Grosso, on the
brief) for Arab African International Bank,
Martin Domb, Hill, Betts & Nash, LLP,
New York, NY, (John F. Keating, Jr., on
the brief) for Emirates Bank International,
Appearing for Appellee.

Present: MCLAUGHLIN, POOLER,
and B.D. PARKER, Jr., Circuit Judges.

SUMMARY ORDER

COMMENTS: Please add the attached
summary order from the Second Circuit
Court of Appeals to your Westlaw data-

base. It was issued in April 2002 and has not appeared. You can always download it on our website: http:/ca2.uscourts.gov.

Thanks.

THIS SUMMARY ORDER WILL NOT BE PUBLISHED IN THE FEDERAL REPORTER AND MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY TO THIS OR ANY OTHER COURT, BUT MAY BE CALLED TO THE ATTENTION OF THIS OR ANY OTHER COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA.

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the United States Courthouse, Foley Square, in the City of New York, on the 22nd day of April two thousand and two.

ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of said District Court be and it hereby is AFFIRMED.

First Union National Bank ("FUNB") appeals from the March 29, 2001, opinion and order of the United States District Court for the Southern District of New York (Kaplan, *J.*) granting the motions of Arab African International Bank ("AAIB") and Emirates Bank International ("EBI") to dismiss on the grounds of *forum non conveniens*. *First Union Nat'l Bank v. Paribas*, 135 F.Supp.2d 443 (S.D.N.Y. 2001). For the reasons given below, we affirm.

The underlying litigation involves a massive fraud scheme involving letters of credit paid in London. *First Union*, 135 F.Supp.2d at 444–45. Solo Industries Ltd. ("Solo"), located principally in the Middle East, applied to a number of banks in the

Middle East (including defendant banks' Sharjah and Dubai branches) for deferred payment letters of credit in favor of a United Kingdom company, Simetal Ltd. *Id.* at 445–46. Each of the letters authorized reimbursement by drawing dollars from the issuer's account at a New York City bank. *Id.* at 446. Simetal presented the letters to the confirming banks in London before the letters matured. *Id.* Many of the confirming banks, including FUNB's London branch, discounted the letters and made payments to Simetal, apparently relying on the obligation of the issuing banks to pay the full amount owed when the letters matured. *Id.*

In the spring of 1999, Solo collapsed, leaving the issuing banks facing losses of more than $300 million. *Id.* at 445. The documents presented by Simetal to the confirming banks were apparently fraudulent. *Id.* The defendant banks argue they are not liable because the confirming banks knew of the fraudulent activity before discounting the letters. *Id.*

There is an ongoing investigation by the Serious Fraud Office in London, which has resulted in several arrests. *Id.* at 45. On March 1, 2000, a consortium of banks which issued letters, including defendant EBI, commenced a proceeding against FUNB in England seeking the disclosure of certain documents. The Consortium's solicitors informed FUNB on July 14, 2000, that they "anticipate[d] that we shall be instructed to issue proceedings against First Union National Bank in the near future." First Union filed the instant complaints against defendants in the Southern District on July 20, 2000. The district court allowed discovery to proceed, although only as to jurisdictional issues with respect to AAIB, while taking the motion to dismiss on *forum non conveniens* grounds under advisement. The district

court issued its order of dismissal on March 29, 2001. This appeal followed.

Dismissal of an action for *forum non conveniens* is reviewed for clear abuse of discretion, for "the grant or denial of a motion to dismiss for *forum non conveniens* is generally committed to a district court's discretion." *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 99 (2d Cir. 2000). However, the grant of such deference "presupposes that the court used the correct standards prescribed by the governing rule of law." *Id.*

■ A United States plaintiff's choice of a United States forum in which to litigate is given great deference. *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 71 (2d Cir. 2001) (en banc). "[T]he greater the plaintiff's or the lawsuit's bona fide connection to the United States and to the forum of choice and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States, the more difficult it will be for the defendant to gain dismissal for *forum non conveniens.*" *Id.* at 72. FUNB argues the district court abused its discretion by failing to grant it the full deference due to it by virtue of its U.S. citizenship.

The district court did not abuse its discretion in somewhat diminishing the deference due FUNB's choice of forum. First, and most compelling, there is evidence that FUNB chose to bring suit in the Southern District instead of England because there had been a change in English law unfavorable to its position. In *Banco Santander, S.A. v. Banque Paribas*, decided in February, 2000, an English Court of Appeal found that a confirming bank which pays out on a discounted letter of credit in advance of the letter of credit's maturity is an assignee, and thus is subject to whatever defenses the issuer may have against the beneficiary. 1 All E.R. (Comm.) 776 (2000). Therefore, the issuing banks

would be permitted to assert the alleged fraud as a defense to FUNB's claims as a confirming bank. In addition, FUNB's choice of forum is diminished somewhat because "plaintiff is a corporation doing business abroad and can expect to litigate in foreign courts." *Guidi v. Inter–Continental Hotels Corp.*, 224 F.3d 142, 147 (2d Cir.2000). While the district court did analyze the choice of forum as a private interest factor, a careful reading of the opinion shows the district court discussed the deference issue first and in detail. It did not, as FUNB argues, merely recite the proper language and then eliminate the presumption. Taken together, these factors show the district court did not abuse its discretion by failing to accord proper deference to plaintiff's choice of forum.

■ The deference given plaintiff's choice of forum is not dispositive on a *forum non conveniens* motion. *Iragorri*, 274 F.3d at 73. Deference is "only the first level of inquiry," to be followed by traditional *forum non conveniens* analysis. *Id.* After considering deference, the first factor is whether an adequate alternative forum exists. In this case, the parties do not dispute that England is an adequate alternative forum. Analysis next turns to a weighing of the private and public interest factors. *Id.* The private interest factors include access to sources of proof; availability of compulsory process for unwilling witnesses; and the cost of compelling willing witnesses to appear. *Id.* at 73–74. The public interest factors include whether the chosen forum is congested; whether there is a relationship between the chosen forum and the litigation and choice of law. *Id.* at 74.

We begin with the private factors. The district court found the access to sources of proof factor weighed in favor of defendants because most of the documents at issue are in London. FUNB argues that

to comply with the district court's discovery order, defendants produced more than 23,000 documents in the United States, showing photocopying and shipping of documents is not overly burdensome. However, as Judge Kaplan pointed out, "the investigations in England have generated tens of thousands of pages of documents of likely relevance, including documents seized by British authorities in a raid on Simetal's London office" and other documents obtained in English court proceedings. *First Union*, 135 F.Supp.2d at 449. Because the documents at issue are not under defendants' control, the district court did not abuse its discretion in weighing this factor in favor of dismissal.

The district court found the cost of obtaining the testimony of willing witnesses weighed this factor in favor of dismissal, finding (1) there are, few if any, potential witnesses in New York; and (2) the majority of the willing witnesses are in London or the Middle East, and it would be cheaper and more convenient to travel between the Middle East and London rather than the Middle East and New York. *First Union*, 135 F.Supp.2d at 449. FUNB argues the district court abused its discretion because defendants failed to put forth any evidence to support their argument that it would cost any more to produce willing witnesses in London than it would cost to produce willing witnesses in New York. FUNB is correct—the burden of establishing that it would be overly expensive to transport witnesses to New York lies with defendants, who failed to show that "these costs are excessively burdensome." *Wiwa*, 226 F.3d at 107.

As to the availability of compulsory process to obtain the testimony of unwilling witnesses, the district court weighed this factor in favor of dismissal. It found that a number of the witnesses identified by the defendants were non-party witnesses who would probably not testify willingly and could be subpoenaed for trial. *First Union*, 135 F.Supp.2d at 449–50. It also found adequate depositions of unwilling witnesses would be "difficult or impossible" to obtain because British reservations to international treaties permit depositions to only be used for trial testimony, and that English law prevented the use of impeachment by the party calling the witness. *Id.* There appear to be no witnesses subject to compulsory service in the Southern District. FUNB argues depositions taken pursuant to letters rogatory would be a meaningful substitute for live testimony. "Live testimony is especially important in a fraud action where the factfinder's evaluation of witnesses' credibility is central to the resolution of the issues." *DiRienzo v. Philip Servs. Corp.*, 294 F.3d 21, 30 (2d Cir. April 1, 2002). While videotaped depositions can be an adequate substitute, it appears there are a number of witnesses who would have to be so deposed, including several key ones. Given that, the district court did not abuse its discretion in weighing this factor in favor of dismissal. *See id.* at 30.

We turn, then, to the public interest factors. Here, the parties appear to have joined issue on just two: choice of law and the relationship between the litigation and the chosen forum.

The district court found it premature to make a "definitive" choice of law analysis because (1) it was not clear that there is a conflict between New York and English law and (2) the litigation was at a preliminary stage. *First Union*, 135 F.Supp.2d at 453. It concluded that, "[w]hat may be said is that there is at least some likelihood that this Court, if it retained the cases, would be obliged to apply English law to part of or to the entire case, a factor that cuts to some degree in defendants' favor." *Id.* FUNB argues New York law applies, relying on *J. Zeevi & Sons, Ltd. v. Grindlays Bank (Uganda) Ltd.*, 37 N.Y.2d

220, 371 N.Y.S.2d 892, 333 N.E.2d 168 (1975). As we discern no clear error of law in the district court's findings, it did not abuse its discretion in weighing this factor. Finally, the district court did not abuse its discretion when it determined the litigation and related activity concerning the fraud is centered in London. Aside from the payment provision in the letters of credit and plaintiff's U.S. citizenship, there are simply no contacts between this litigation and New York.

Taken together, the private and public factors outweigh the deference due plaintiff's choice of forum. The district court did not abuse its discretion in dismissing on *forum non conveniens* grounds.