**TELEPHONE SYSTEMS INTERNATIONAL, INC., Plaintiff,**

v.

**NETWORK TELECOM PLC and, Network Telecom (Europe) Limited, Defendants.**

No. 02 Civ. 8727(WHP).

United States District Court, S.D. New York.

Nov. 25, 2003.

Richard C. Schoenstein, Esq., Paul, Hastings, Janofsky & Walker, LLP, New York City, J. Allen Maines, Esq., Eric C. Lang, Esq., Paul, Hastings, Janofsky & Walker, LLP, Atlanta, GA, for Plaintiff.

Martin J. Murray, Esq., Arda Arslanian, Esq., Law Offices of Martin J. Murray, New York City, for Defendants.

## MEMORANDUM and ORDER

PAULEY, District Judge.

Plaintiff Telephone Systems International, Inc. ("TSI") brings this action against defendants Network Telecom PLC ("NT Group") and its subsidiary, Network Telecom (Europe) Limited ("NT Europe") (collectively, "defendants"), for a declaratory judgment pursuant to 28 U.S.C. 2201, *et. seq.*, stating that no enforceable contract exists between the parties, and that TSI is not liable for breach of contract for its refusal to pay defendants' invoices. (Second Amended Complaint, dated February 13, 2003 ("Am.Compl.") ¶ 36.) TSI also requests an accounting to determine how much of the invoiced amounts it owes defendants. (Am.Compl.¶ 36.)

Defendants move to dismiss this action on three grounds: (1) failure to state a claim against NT Group, pursuant to Fed. R.Civ.P. 12(b)(6); (2) lack of personal jurisdiction against both defendants, pursuant to Fed.R.Civ.P. 12(b)(2); and (3) *forum non conveniens.* For the reasons stated below, this Court grants defendants' motion to dismiss.

## BACKGROUND

This action involves a dispute over defendants' invoices for wireless telecommunications services in Afghanistan. TSI is a New Jersey corporation with its principal place of business in New Jersey.[1] (Am. Compl.¶ 1.) Defendants NT Group and NT Europe are both British companies with their principal place of business in London, England. (Am.Compl.¶ 2.)

In 1998, TSI entered into a business relationship in London with Stuart Bentham and Michael Cecil, two principals of the defendants. (Affidavit of Stuart Bentham, dated February 19, 2003 ("Bentham I Aff.") ¶¶ 3–5, 10.) Both Bentham and Cecil are both UK citizens. They worked with TSI under a license from the Afghani Government to construct a wireless telecommunications infrastructure within Afghanistan (the "Afghan Project"). (Am. Compl. ¶ 9; Bentham I Aff. ¶ 5.) In 1999, Bentham and Cecil incorporated NT Europe. Thereafter, NT Group was incorporated as a subsidiary of NT Europe. (Bentham I Aff. ¶ 6.)

In 1999, the United States Government imposed sanctions on the Afghan Government, which was controlled by the Taliban, and prohibited American corporations from engaging in business there. Consequently, TSI, was barred from business in

Afghanistan. (Bayat Dep. at 127–30.) To overcome this obstacle, TSI entered into an agreement with the defendants to aid in the completion of the Afghan Project during the sanctions period. (Bentham I Aff. ¶¶ 5, 10.) Although the United States lifted its sanctions in January 2002, TSI continued to work with the defendants on the Afghan Project.

TSI alleges that defendants' invoices for services included unauthorized expenditures and excessive labor rates. (Am. Compl.¶¶ 9–16.) After NT Europe demanded payment, TSI filed this action for declaratory relief, seeking: (1) a determination that there is no enforceable contract between the parties and that TSI is not liable for breach of contract; and (2) a determination of the amount TSI owes defendants for services performed. (Am. Compl.¶ 36.)

Approximately one month after this action was commenced, NT Europe filed an action against TSI in the United Kingdom concerning the same invoices and services, and sought monetary damages for breach of contract. *See Network Telecom (Eurpoe) Limited v. Telephone Systems Int'l, Inc.,* Claim No. HQ02X03852 (High Court of Justice, Queen's Bench Division 2003). The British court has ruled that it has jurisdiction over TSI. (Order, dated May 21, 2003.)

## DISCUSSION

I. *Forum Non Conveniens*

█ Defendants move to dismiss this action on *forum non conveniens* grounds. In its opposition, TSI contends that this Court should defer to its choice of forum.

---

1. During the parties' relationship, TSI's principal place of business was Fort Lee, New Jersey. TSI briefly moved to New York in April 2002, but relocated its operations back to New Jersey earlier this year. (Plaintiff's Opposition to the Motion to Dismiss ("Pl.'s Opp.") at Ex. F; Bayat Dep. at 60–61).

Even assuming, *arguendo*, that this Court is able to assert jurisdiction over the defendants,[2] and that plaintiffs have asserted a claim against NT Group, this action must be dismissed on *forum non conveniens* grounds.

■■■ "The decision to dismiss a case on *forum non conveniens* grounds 'lies wholly within the broad discretion of the district court.'" *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 72 (2d Cir.2001) (en banc) (quoting *Scottish Air Int'l, Inc. v. British Caledonian Group, PLC*, 81 F.3d 1224, 1232 (2d Cir.1996)); *accord Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). An evaluation of a motion to dismiss based on *forum non conveniens* proceeds in three stages. "[T]he 'first level of inquiry' pertains to 'determining whether the plaintiff's choice [of forum] is entitled to more or less deference.'" *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 70 (2d Cir.2003) (quoting *Iragorri*, 274 F.3d at 73) (second alteration in original). "A determination of what degree of deference is owed a plaintiff's choice of forum does not dispose of a *forum non conveniens* motion ... because even after determining what deference to accord the plaintiff's choice, a district court must still conduct the analysis set out in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)." *Pollux Holding*, 329 F.3d at 70; *accord Iragorri*, 274 F.3d at 73.

■■■ After determining the degree of deference owed to a plaintiff's choice of forum, a district court must determine whether an adequate alternative forum exists. *Aguinda v. Texaco, Inc.*, 303 F.3d 470, 476 (2d Cir.2002); *Monegasque*, 311 F.3d at 499. If the court finds an adequate alternative forum, it must "balance a series of factors involving the private interests of the parties in maintaining the litigation in the competing fora and any public interests at stake" to determine "whether the case should be adjudicated in the plaintiff's chosen forum or in the alternative forum suggested by the defendant." *Aguinda*, 303 F.3d at 476 (citing *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 100 (2d Cir.2000)); *Pollux Holding*, 329 F.3d at 70 (citing *Gilbert*, 330 U.S. at 507–09, 67 S.Ct. 839); *accord Iragorri*, 274 F.3d at 73–74. The party seeking dismissal bears the burden of proof on a *forum non conveniens* motion. *Aguinda*, 303 F.3d at 476.

### A. Deference to Plaintiff's Choice of Forum

The defendants argue that this Court should accord little deference to TSI's choice of forum because all the acts complained of occurred outside the United States. TSI argues that there is a strong presumption in favor of its chosen forum because it is an American corporation, and litigating the action in the United States is more convenient.

■■■ An American citizen's choice of forum in the United States is given significant deference, while a foreign plaintiff or real party in interest's choice of forum is given less. *Piper*, 454 U.S. at 255–56, 102 S.Ct. 252. However, "it is an untenable leap of logic ... [to make a] blanket assertion that a plaintiff's choice of forum deserves presumptive deference simply because the chosen forum is [the] defendant's

---

**2.** This Court may assume jurisdiction in order to address the *forum non conveniens* issue raised by defendants. *See In re Arbitration between Monegasque De Reassurances S.A.M. v. Nak Naftogaz Of Ukraine*, 311 F.3d 488,

497–98 (2d Cir.2002) (citing *In re Minister Papandreou*, 139 F.3d 247, 255–56 (D.C.Cir. 1998)). Accordingly, this Court declines to address defendants' arguments concerning lack of personal jurisdiction.

home forum." *Pollux*, 329 F.3d at 74; *accord Iragorri*, 274 F.3d at 74 ("[W]hile [a] plaintiff's citizenship and residence can serve as a proxy for, or indication of, convenience, neither the plaintiff's citizenship nor residence, nor the degree of deference given to her choice of forum, necessarily controls the outcome."); *Alcoa S.S. Co. v. M/V Nordic Regent*, 654 F.2d 147, 152–54 (2d Cir.1980) (en banc) ("American citizenship alone is not a barrier to dismissal on the ground of *forum non conveniens*."); *Wiwa*, 226 F.3d at 101 (There is no "rigid rule of decision protecting U.S. citizen or resident plaintiffs from dismissal for *forum non conveniens*."). Indeed, "[t]he weaker the connection between a plaintiff's U.S. activities, even those of a U.S. plaintiff, and the events at issue in the lawsuit, the more likely it is that defendants attacking the plaintiff's choice of a U.S. forum will be able to marshal a successful challenge to that choice." *First Union Nat'l Bank v. Paribas*, 135 F.Supp.2d at 443, 447 (S.D.N.Y.2001), *aff'd* 48 Fed.Appx. 801, 2002 WL 31267985 (2d Cir.2002); *accord Pollux*, 329 F.3d at 74; *Sussman v. Bank of Israel*, 801 F.Supp. 1068, 1073 (S.D.N.Y. 1992), *aff'd* 990 F.2d 71 (2d Cir.1993).

This Court finds that TSI's choice of forum must be accorded significant deference. There is no evidence that TSI, an American corporation, had an improper motive in bringing suit in the United States. *See DiRienzo v. Philip Servs. Corp.*, 294 F.3d 21, 28 (2d Cir.2002) (holding that plaintiff's choice of forum was entitled to deference where a " 'bona fide' connection to the United States" was established). While TSI's interest in litigating the suit in its home forum "is not outcome-determinative in the weighing of relevant factors," it is, nevertheless a valid reason for finding deference. *DiRienzo*, 294 F.3d at 28. Therefore, defendants must show that the *Gilbert* factors strongly favor them, or TSI's choice of forum will

not be disturbed. *Gilbert*, 330 U.S. at 508, 67 S.Ct. 839; *Iragorri*, 274 F.3d at 74.

### B. *Adequate Alternative Forum*

■ Defendants contend that the United Kingdom is an adequate alternative forum for this suit. "The deference given to a plaintiff's choice of forum does not dispose of a *forum non conveniens* motion. It is only the first level of inquiry." *Iragorri*, 274 F.3d at 73; *accord Pollux Holding*, 329 F.3d at 74–75. "An alternative forum is adequate if defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute." *Pollux Holding*, 329 F.3d at 75; *accord Piper Aircraft*, 454 U.S. at 254 n. 22, 102 S.Ct. 252; *Aguinda*, 303 F.3d at 476. "[T]he fact that the law of the foreign forum differs from American law 'should ordinarily not be given conclusive or even substantial weight' in assessing the adequacy of the forum." *Capital Currency Exch., N.V. v. Nat'l Westminster Bank PLC*, 155 F.3d 603, 610 (2d Cir.1998) (quoting *Piper Aircraft*, 454 U.S. at 247, 102 S.Ct. 252 (holding that an unfavorable change in law does not preclude *forum non conveniens* dismissal)).

This Court finds that the United Kingdom is an adequate alternative forum. First, there is no evidence to suggest that defendants, both based in London would not be subject to process in the United Kingdom, or that the British courts would not permit litigation over nonpayment of invoices. Indeed, NT Europe has already submitted to the jurisdiction of the English courts by commencing an action against TSI based on nonpayment of the same invoices at issue in this action. *See Network Telecom (Europe) Limited v. Telephone Systems Int'l, Inc.*, Claim No. HQ02X03852 (High Court of Justice, Queen's Bench Division 2003). Additionally, it is well-established that British courts

are an adequate alternative forum for resolving disputes that may impact American corporations or citizens. *See, e.g., Pollux,* 329 F.3d at 75 (finding UK an adequate alternative forum that "permits litigation to resolve commercial disputes"); *Wiwa v. Royal Dutch Petroleum Co.,* 226 F.3d 88, 101 (2d Cir.2000) ("British courts are . . . exemplary in their fairness and commitment to the rule of law."); *Capital Currency,* 155 F.3d at 610 (2d Cir.1998) (finding UK an adequate alternative forum even though plaintiffs may not be able to recover on certain claims there); *Fitzgerald v. Texaco, Inc.,* 521 F.2d 448, 453 (2d Cir. 1975) (finding UK forum adequate, even if recovery would be more difficult for plaintiff). Accordingly, this Court finds that the United Kingdom is an adequate alternative forum for this suit.

### C. *Private and Public Interest Factors*

■ Since an alternative forum exists, the next step in the analysis is consideration of the *Gilbert* private and public interest factors "to determine which forum will be most convenient and will best serve the ends of justice." *Capital Currency,* 155 F.3d at 609; *accord Pollux,* 329 F.3d at 74–75. In *Gilbert,* the Supreme Court instructed courts to consider several private and public interest factors in determining whether to dismiss an action on *forum non conveniens* grounds. *Gilbert,* 330 U.S. at 507–09, 67 S.Ct. 839. The *Gilbert* factors "weigh [the] defendant's hardships if jurisdiction is retained in the forum of plaintiff's choice against plaintiff's hardships if the motion to dismiss is granted and plaintiff is forced to begin suit anew in a different forum." *Pollux,* 329 F.3d at 74.

### 1. *Private Interest Factors*

■ A district court should consider four private interest factors in a *forum non conveniens* analysis: "(1) ease of access to evidence; (2) cost for witnesses to attend trial; (3) availability of compulsory process; and (4) other factors that might shorten trial or make it less expensive." *Capital Currency,* 155 F.3d at 609; *accord Gilbert,* 330 U.S. at 508, 67 S.Ct. 839.

This Court finds that the private interest factors strongly favor litigation of this action in the United Kingdom. In considering the ease of access to sources of proof, both parties have equal access to documents. While TSI claims that its copies of the invoices are in New York, defendants note that all back-up invoices, shipping records and time records are in the United Kingdom. (Bentham I Aff. ¶ 22; Affidavit of Robert Phillips, dated March 12, 2003 ("Phillips Aff.") ¶ 26.) In any event, "technological advances have minimized the burden of transporting documentary evidence." *Pollux Holding,* 329 F.3d at 75. Accordingly, this factor is neutral.

In considering witness availability and the costs of bringing witnesses to trial, however, these factors weigh heavily in favor of dismissal. First, only two of the twelve trial witnesses identified by TSI in its Rule 26 initial disclosures reside in the United States. (Affidavit of Stuart Bentham, dated March 24, 2003 ("Bentham II Aff.") ¶ 17, Ex. 7; Bentham I Aff. ¶¶ 23–24.) Six of the twelve TSI witnesses live in London and three reside in Europe (Bentham II Aff. ¶ 17, Ex. 7; Bentham I Aff. ¶¶ 23–24.) The two TSI witnesses that reside in the United States, Thomas Bosley and Daniel Florentine, claim to have "knowledge regarding party negotiations." (Bentham II Aff. Ex. 7.) Those witnesses, however, began working with TSI in August 2002, near the end of the period in which the invoices are disputed, and would be less material in aiding the trier of fact. (Bentham II Aff. ¶ 17, Ex. 7.)

Further, six of the nine witnesses defendants would call at trial are British subjects. (Bentham I Aff. ¶ 23–24; Bentham II Aff. ¶ 17.) The cost of transporting the foreign witnesses to New York and boarding them here would be substantial, especially when pitted against the backdrop of a total recovery of $250,000.[3] *Capital Currency*, 155 F.3d at 611 (holding that a United States trial "might impose significant burdens on the parties" where most of the witnesses resided in England, making the cost of transport to New York "enormous"); *Aguinda*, 303 F.3d at 470 (finding private interest factors weighed heavily in favor of foreign forum where all plaintiffs and putative class members lived abroad).

Second, defendants have specifically identified several key non-party witnesses whose trial or deposition testimony can be compelled only in the United Kingdom. (Bentham I Aff. ¶¶ 23–24; Bentham II Aff. ¶ 17.) *See Fitzgerald*, 521 F.2d at 451–52; *First Union*, 135 F.Supp.2d at 450 (noting that "[u]nwilling English witnesses could be compelled to testify . . . only if the trial were held in England."). In contrast, TSI has not identified any witness that would be unavailable if this action proceeded in the United Kingdom, nor has it disputed the defendants' allegations of witness unavailability in this forum. The heart of this breach of contract and accounting dispute concerns whether the parties entered into certain oral agreements for services and labor rates, and whether defendants overstated time expended on certain projects in their invoices. (Am.Compl.¶¶ 21–36.) It is undisputed that many of the foreign, unavailable non-party witnesses would have information concerning the parties'

understandings and the time records. Thus, the unavailability of material non-party witnesses at trial would be significant, and diminish the fact finder's ability to base a verdict on a full understanding of the facts. *See Iragorri*, 274 F.3d at 75 (holding that "live testimony of key witnesses is necessary so that the trier of fact can assess the witnesses' demeanor.") (citations omitted).

Finally, in analyzing "other factors," this Court notes that a parallel action between the parties, over issues identical to those implicated here, is proceeding before a British court. While the parties are litigating this dispute in two different fora, that tactical strategy is not significant to this *forum non conveniens* analysis.

Accordingly, because many material witnesses are located abroad, several non-party witnesses cannot be compelled to testify here, the private *Gilbert* factors weigh heavily in favor of dismissal. *See Capital Currency*, 155 F.3d at 611–12 (holding the private interest factors to weigh substantially in favor of English forum where crucial witnesses would not be subject to compulsory process in the United States); *Pollux*, 329 F.3d at 75 (affirming dismissal where several material witnesses could not be compelled to testify in the United States, but could be called to testify in England); *First Union*, 135 F.Supp.2d at 454 ("[I]nsisting on a trial in New York unquestionably would deprive the finder of fact of the live testimony of unwilling English witnesses.").

### 2. Public Interest Factors

■ This Court also finds that the public interest factors, which address concerns of judicial economy, favor litigation of the

---

3. TSI originally disputed $610,000 that defendants billed in the invoices. After settlement discussions between the parties, TSI paid NT Europe $360,000 on January 22, 2003.

(Bentham I Aff. ¶ 2.) The parties both agree that only $250,000 of the invoice amounts remains in dispute.

dispute in the United Kingdom. Public interest considerations include: (1) "administrative difficulties associated with court congestion"; (2) the unfairness· of imposing jury duty on a community· with no relation to the litigation"; (3) "the interest in having localized controversies decided at home"; and (4) "avoiding difficult problems in conflict of laws and the application of foreign law." *Aguinda*, 303 F.3d at 480; *accord Gilbert*, 330 U.S. at 508–09, 67 S.Ct. 839.

■ A district court must "guard [its] ·docket from disputes with little connection to this forum." *Doe v. Hyland Therapeutics Div.*, 807 F.Supp. 1117, 1128 (S.D.N.Y. 1992); *accord First Union*, 135 F.Supp.2d at 453 (dismissing on *forum non conveniens* grounds where fraud was centered in London and the parties had a tangential connection to New York). It is evident that there is only a gossamer connection between TSI's claims and this˙ forum. There is no local interest in deciding a dispute over a relationship formed in the United Kingdom, invoices billed in the United Kingdom, and services that were performed by a British company in Afghanistan. Further, nearly all of the material fact witnesses are located in the United Kingdom. (Bentham I Aff. ¶¶ 23–24; Bentham II Aff. ¶ 17; Ex. 7.) While TSI acknowledges that the Southern District of New York is "indisputably a busy court district," it nevertheless baldly asserts, without support, that this district would not be burdened˙ by such litigation and that the "factor relating to localized controversies is irrelevant." (Pl.'s Opp. at 22–23.) This Court disagrees. TSI's claims, which have a tenuous connection to this forum, "do not justify the significant administrative costs that stand to be levied upon this Court, or the burden of jury duty expected to be thrust upon a community substantially distanced from the con-

troversy." *Hyland Therapeutics*, 807 F.Supp. at 1128 (citations omitted). This district is one of the busiest in the country, making it a paradigmatic "congested center" of litigation alluded to in *Gilbert*. *Gilbert*, 330 U.S. at 508, 67 S.Ct. 839; *see also Flores v. Southern Peru Copper Corp.*, 253 F.Supp.2d 510, 543 (S.D.N.Y.2002) (granting *forum non conveniens* motion and noting the high level of case congestion in this district). In that connection, this district's jurors should not be subjected to a litigation that is only tangentially related to the United States. "Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Gilbert*, 330 U.S. at 508–09, 67 S.Ct. 839; *accord First Union*, 135 F.Supp.2d at 453.

·Finally, addressing the choice of law factor, TSI argues that "it is too early to determine choice of law." (Pl.'s Opp. at 23.) This Court agrees that it is premature to make a definitive choice of law determination as it is unclear whether there is truly a conflict between New York and British law. This dispute, however, involves invoices billed by a British company for services it performed abroad, and a relationship between the parties that commenced in London. Thus, without engaging in a full conflict of laws analysis, this Court finds that "there is at least some likelihood that this Court, if it retained the case[ ], would be obliged to apply English law to a part or to the entire case, a factor that cuts to some degree in defendant[s'] favor." *First Union*, 135 F.Supp.2d at 453; *accord Pollux Holding*, 329 F.3d at 76. In sum, the public interest factors favor dismissal of this action.

### D. *Balancing of Factors*

Although there is a strong presumption in favor of TSI's choice of a United States forum, it is merely a proxy for the usual

convenience an American plaintiff enjoys in litigating at home. *Iragorri*, 274 F.3d at 74. That presumption in favor of a plaintiff's convenience is not absolute and may be outweighed. *Pollux Holding*, 329 F.3d at 70; *Capital Currency*, 155 F.3d at 612. This Court holds that the presumption in favor of TSI's choice of forum is overcome because: (1) an adequate alternative forum exists in the United Kingdom; and (2) both the *Gilbert* private and public interest factors weigh heavily in favor of litigating the dispute there. *See Capital Currency*, 155 F.3d at 612 (holding *forum non conveniens* dismissal appropriate even for American plaintiff where private interest factors weighed substantially in favor of English venue). Retaining jurisdiction in this district would not be convenient for the parties or the witnesses and would not promote principles of efficient and economically prudent litigation. Accordingly, defendants' motion to dismiss this action on *forum non conveniens* grounds is granted. Because this Court grants defendants' motion to dismiss, defendants' alternative arguments concerning failure to state a claim and lack of personal jurisdiction are moot.

## CONCLUSION

For the reasons set forth above, defendants' motion to dismiss is granted. The Clerk of the Court is directed to mark this action closed.

SO ORDERED.