**NOREX PETROLEUM LIMITED,**
Plaintiff–Appellant,

v.

**ACCESS INDUSTRIES, INC.,** Renova, Inc., Leonard Blavatnik, Victor Vekselberg, Alfa Group Consortium, Crown Finance Foundation, CTF Holdings, Ltd., Alfa Finance Holdings, S.A., Crown Luxembourg Holdings, S.A., Elliot Spitz, Tyumen Oil Company, Simon Kukes, Joseph Bakaleynik, LT Enterprises Limited, Sandwell Enterprises Limited, Eastmount Properties Limited and Aston Trustees Limited, Defendants–Appellees.

Docket No. 04–1357–CV.

United States Court of Appeals,
Second Circuit.

Argued: Oct. 26, 2004.

Decided: July 21, 2005.

Bruce S. Marks, Marks & Sokolov, LLC, Philadelphia, Pennsylvania (Peter J.W. Sherwin, Proskauer Rose LLP, New York, New York; George C. Pratt, Farrell Fritz, P.C., Uniondale, New York, on the brief), for Plaintiff–Appellant.

Kim Koopersmith (Christopher T. Schulten, on the brief), Akin Gump Strauss Hauer & Feld, New York, New York, for Alfa Group Consortium, Crown Finance Foundation, CTF Holdings, Ltd., and Alfa Finance Holdings, S.A., submitting on behalf of all Defendants–Appellees.

Of Counsel: White & Case LLP (Owen C. Pell, Robert M. Kelly, Timothy S. Pfeifer), New York, New York, for Tyumen Oil Company, Simon Kukes, and Joseph Bakaleynik.

Reed Smith LLP (Herbert F. Kozlov, Kenneth Dana Greenwald), New York, New York, for Renova, Inc. and Victor Vekselberg.

Morrison & Foerster LLP (Mark P. Ladner), New York, New York, for Sandwell Enterprises Limited, Eastmount Properties Limited, and Aston Trustees Limited.

Curtis, Mallet–Prevost, Colt & Mosle LLP (Turner P. Smith, Myles K. Bartley), New York, New York, for Access Industries, Inc. and Leonard Blavatnik.

Alston & Bird LLP (John F. Cambria), New York, New York, for Elliot Spitz and Crown Lux Holdings, S.A.R.L.

Eric J. Grannis, New York, New York, for LT Enterprises Limited.

Before: WINTER, KATZMANN, and RAGGI, Circuit Judges.

RAGGI, Circuit Judge.

For most of the 1990s, plaintiff-appellant Norex Petroleum Limited ("Norex") was the majority shareholder of ZAO Corporation Yugraneft ("Yugraneft"), a Russian oil company. In 2002, Norex sued defendants-appellees Access Industries, Inc.; Renova, Inc.; Leonard Blavatnik; Victor Vekselberg; Alfa Group Consortium; Crown Finance Foundation; CTF Holdings, Ltd.; Alfa Finance Holdings, S.A.; Crown Luxembourg Holdings, S.A.; Elliot Spitz; Tyumen Oil Company ("TNK"); Si-

mon Kukes; Joseph Bakaleynik; LT Enterprises Limited; Sandwell Enterprises Limited; Eastmount Properties Limited; and Aston Trustees Limited (collectively "the defendants") for substantive and conspiratorial violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968, in connection with their alleged takeover of Yugraneft. Norex now appeals from a judgment of the United States District Court for the Southern District of New York (Laura Taylor Swain, *Judge*), entered on March 3, 2004, granting defendants' motion to dismiss Norex's complaint on the ground of *forum non conveniens*. See *Norex Petroleum Ltd. v. Access Indus., Inc.*, 304 F.Supp.2d 570, 584 (S.D.N.Y.2004). It contends, *inter alia*, that the district court erred at the first step of *forum non conveniens* analysis by giving undue weight to a presumption that Canadian-based Norex's choice of a New York forum was not based on genuine convenience without engaging in the sliding-scale analysis set forth in *Iragorri v. United Technologies Corp.*, 274 F.3d 65, 71–73 (2d Cir.2001) (*en banc*). Norex further contends that the defendants failed at the second step of *forum non conveniens* analysis to carry their burden to demonstrate that Russia presently affords Norex an adequate alternative forum for litigation of the issues underlying its RICO claims. We agree with both arguments and, accordingly, vacate the *forum non conveniens* dismissal and remand the case to the district court for further proceedings consistent with this opinion.

We further note that, to the extent the district court's *forum non conveniens* analysis was informed by an assumption that the preclusive effect of a 2002 Russian default judgment against Norex would be the same in the United States as in Russia, these issues are, in fact, distinct. Where a foreign jurisdiction would deem a claim precluded, it does *not* afford the present available alternative forum for litigation necessary to support *forum non conveniens* dismissal. United States recognition of a final foreign judgment may support dismissal of a related action in our courts, but on a ground of international comity more akin to *res judicata* than *forum non conveniens*. In this case, however, the district court could not recognize, much less give preclusive effect to, the Russian default judgment against Norex without affording Norex an opportunity to be heard on its challenge to the Russian court's exercise of personal jurisdiction. Accordingly, dismissal on preclusion grounds is premature. The parties may, however, pursue the matter further on remand.

## I. *Background*

For purposes of this appeal, we accept the facts pleaded in plaintiff's complaint as true. See *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 93 n. 1 (2d Cir. 2000).

### A. *The Parties*

Norex is a Cypriot corporation owned by Appalachia Investments, Ltd., a California corporation beneficially owned by Alex Rotzang, a Canadian citizen. Norex's principal place of business is Calgary, Canada. The defendant corporations and associations are variously organized under the laws of New York (Access Industries and Renova); several European sovereignties, including Lichtenstein (Crown Finance Foundation), Gibraltar (CTF Holdings), Luxembourg (Alfa Finance Holdings and Crown Luxembourg Holdings),[1] the

---

1. Defendants Crown Finance Foundation; CTF Holdings Ltd.; Alfa Finance Holdings, S.A.; and Crown Luxembourg Holdings, S.A. are among the companies affiliated with defendant Alfa Group Consortium, an unincorporated association.

Russian Federation (TNK),[2] and the Isle of Man (Sandwell Enterprises, Eastmount Properties, and Aston Trustees Limited); as well as the Bahamas (LT Enterprises). Of the five individually named defendants, four are United States citizens: (1) Leonard Blavatnik, who maintains a residence in New York City and owns and controls defendant New York corporations Access Industries and Renova; (2) Elliot Spitz, who allegedly managed and supervised various companies owned by Crown Luxembourg Holdings; (3) Simon Kukes, the president and chief executive officer of TNK; and (4) Joseph Bakaleynik, the first vice president of TNK. The fifth individual defendant, Victor Vekselberg, another owner of defendant Renova, is a permanent resident of the United States.

## B. The Charged Racketeering Scheme

During the 1990s, Norex acquired a 60% interest in Yugraneft, with the remaining 40% owned by another Russian oil company, OAO Chernogorneft. Norex alleges that, by the end of the decade, defendants had hatched a scheme to take over Yugraneft by means of various RICO predicate acts of mail and wire fraud, extortion, interstate and foreign travel in aid of racketeering enterprises, and money laundering. See 18 U.S.C. §§ 1961(1)(B), 1962. While many of these predicate acts allegedly occurred entirely in Russia, others involved wiring money through United States banks to bribe officials in Russia, to buy corporate assets in Russia, or to hide the profits of allegedly illegal activities in Russia. In its brief before this court, Norex asserts that defendants "resident in the S.D.N.Y. masterminded and controlled the scheme out of that district." Appellant's Br. at 11–12 (emphasis omitted). Although Norex's factual allegations are complex, we

briefly outline those relevant to resolution of this appeal.

### 1. The Unpaid Oil Dispute

In 1999, an audit of Yugraneft's books and records raised questions regarding the adequacy of the initial capital contribution made by Chernogorneft. As a result, Norex's equity interest in Yugraneft was increased and Chernogorneft's reduced. Meanwhile, Chernogorneft, now controlled by TNK, found itself unable to repay Yugraneft for 70,000 metric tons of oil, part of a larger oil loan made in 1993. At the same time, another company in which TNK also owned a substantial interest owed Yugraneft payment for 102,000 metric tons of oil.

In November 1999, TNK official German Khan met with Norex Chairman Alex Rotzang in San Francisco and demanded that Yugraneft forgive the aforementioned oil debts, threatening that otherwise TNK "would run over Yugraneft like a steamroller," because TNK "eliminate[s] those who go against us." Compl. ¶ 199. The following year, in August 2000, Khan urged Yugraneft General Director Lyudmilla Kondrashina to settle the oil debt for 30% of its value, threatening that a refusal would leave Yugraneft with nothing because TNK had its "own people at all levels of government." Id. ¶ 202. Khan repeated the 30% offer in January 2001, warning Kondrashina that, unless she agreed, TNK would take over Yugraneft. He stated that any litigation to challenge such a takeover would prove futile because TNK " 'controlled' Russia's Supreme Arbitration Court." Id. ¶ 206.

---

**2.** Defendants Access Industries and Renova own and control, directly or indirectly, approximately 50% of TNK.

### 2. *The Defendants' Takeover of Yugraneft*

In fact, extensive litigation did ensue in Russian courts regarding control of Yugraneft, with results generally adverse to Norex.[3] Of particular relevance to this appeal is a lawsuit filed by TNK in Siberia on June 25, 2001, seeking to invalidate a large portion of Norex's equity interest in Yugraneft on the ground that Norex's capital contribution in the form of "know how" had been improperly valued. Norex insists that it was never properly served in this action, which the parties refer to as the "Know–How Case." It further contends that TNK corrupted the court proceedings, obtaining an *ex parte* injunction on June 26, 2001, that barred Norex from voting the disputed Yugraneft shares at shareholders' meetings. Thereafter, the defendants purportedly fabricated the minutes of a June 28, 2001 Yugraneft shareholders' meeting to reflect the transfer of corporate control from Norex to TNK. Defendants then forcibly seized control of Yugraneft operations, employing armed guards to threaten workers and cut off telephone and internet lines.

In July 2001, Yugraneft's former officers secured a court order enjoining TNK's designee from acting as Yugraneft's General Director. On August 1, 2001, when Kondrashina and two attorneys sought to enforce the order, TNK agents attempted to bribe Kondrashina, offering her the position of Deputy Mayor of Nizhnevartovsk if she would cease opposing their efforts. At the same time, they threatened the lawyers, warning one, "We know who you are and where you live," *id.* ¶ 238, and stating to the other, "Do you have life insurance? You might need it because anything can happen. It might happen that some drunk will meet you near your house and nobody will be able to trace it to anything," *id.* ¶ 248. During this encounter, a TNK agent was overheard making a telephone call instructing his listener to have the chief judge of the Nizhnevartovsk Regional Court dismiss the injunction. A dismissal order by the chief judge was, in fact, entered the next day.

Norex claims that in the ensuing months defendants stripped Yugraneft of its assets, selling its oil through TNK, laundering the proceeds through various defendant corporations, and using New York banks to effect wire transfers of approximately $24 million from Yugraneft's accounts.

In January 2002, the Russian court held a final hearing in the Know–How Case and entered a default judgment against Norex, reducing its equity interest in Yugraneft to 20%. Although the Russian court ruled that Norex had been given notice of the action by mail as provided in Article 10 of the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, November 15, 1965, *see generally* 20 U.S.T. 361, 363, 658 U.N.T.S. 163, 169–71, Norex disputes both the applicability of that convention to the Know–How Case and the fact of any such notice. The parties apparently agree that the adverse decision in the Know–How Case now effectively bars Norex from challenging the legality of TNK's takeover of Yugraneft in a Russian court, preventing its present pursuit in Russia of the disputed issues that are at the core of its Southern District complaint. *See* Appellant's Br. at 26–28, 30–31; Appellee's Br. at 22, 24.[4]

---

**3.** Although not a party to all relevant litigation, Norex was a party in actions (1) challenging the transfer of Chernogorneft's interest in Yugraneft to a TNK affiliate, (2) questioning the validity of Norex's capital contribution to Yugraneft, and (3) seeking to set aside the Chernogorneft bankruptcy auction.

**4.** Norex did not appeal the decision in the Know–How Case, and its deadline for doing

3. *The Plaintiff Sues in the Southern District of New York*

Norex sued the defendants in the Southern District of New York in February 2002. The defendants moved to dismiss on a variety of grounds, including *forum non conveniens.* After reviewing extensive submissions, the district court granted *forum non conveniens* dismissal. *See Norex Petroleum Ltd. v. Access Indus., Inc.,* 304 F.Supp.2d at 584. Norex timely appealed to this court.

## II. *Discussion*

### A. *Standard of Review*

■■■ We review the district court's grant of dismissal for *forum non conveniens* deferentially for abuse of discretion. *See Iragorri v. United Techs. Corp.,* 274 F.3d at 72; *accord Carey v. Bayerische Hypo–Und Vereinsbank AG,* 370 F.3d 234, 237 (2d Cir.2004); *Pollux Holding Ltd. v. Chase Manhattan Bank,* 329 F.3d 64, 70 (2d Cir.2003). A district court abuses its discretion in granting a *forum non conveniens* dismissal when its decision "(1) rests either on an error of law or on a clearly erroneous finding of fact, or (2) cannot be located within the range of permissible decisions, or (3) fails to consider all the relevant factors or unreasonably balances those factors." *Pollux Holding Ltd. v. Chase Manhattan Bank,* 329 F.3d at 70 (citations omitted). Applying these principles to this case, we are compelled to conclude that errors of law in determining the deference due plaintiff's choice of forum and in the analysis of an adequate alternative forum require us to vacate the *forum non conveniens* dismissal and to remand this case for further proceedings.

so under Russian law has now apparently

B. *The Iragorri Three–Step Analysis for Forum Non Conveniens Motions*

■■■ "The principle of *forum non conveniens* is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 507, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). Although district courts enjoy broad discretion in applying this principle, this court, sitting *en banc* in *Iragorri v. United Technologies Corp.,* outlined a three-step process to guide the exercise of that discretion. *See* 274 F.3d at 73. At step one, a court determines the degree of deference properly accorded the plaintiff's choice of forum. *See id.* At step two, it considers whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute. *See id.* Finally, at step three, a court balances the private and public interests implicated in the choice of forum. *See id.* at 73–74.

1. *Determining the Degree of Deference Due a Plaintiff's Choice of Forum: Iragorri's Sliding–Scale Analysis*

At the first step of *forum non conveniens* analysis, the district court in this case concluded that Norex's choice of a United States forum was "entitled to less than substantial deference." *Norex Petroleum Ltd. v. Access Indus., Inc.,* 304 F.Supp.2d at 576. The court noted that Norex was not a United States resident, and its choice of a New York forum was, therefore, "not presumptively the most convenient one for it." *Id.* At the same time, however, the court credited Norex's "representation that the United States is a more convenient forum for a Canadian citizen than is Russia," defendants' preferred

passed.

forum, "based on geographic proximity." *Id.* This analysis raises a legal concern: the district court appears to have given controlling weight to the identified adverse presumption without the comparative analysis of convenience and forum shopping appropriate to determine the deference due Norex's choice of a New York forum on the flexible sliding scale approved by this court in *Iragorri v. United Technologies Corp.*, 274 F.3d at 71–72.

■■■■ Any review of a *forum non conveniens* motion starts with "a strong presumption in favor of the plaintiff's choice of forum." *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 255, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). Indeed, it is generally understood that, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert,* 330 U.S. at 508, 67 S.Ct. 839. In applying this general presumption, courts nevertheless recognize that "the degree of deference given to a plaintiff's forum choice [can vary] with the circumstances." *Iragorri v. United Techs. Corp.,* 274 F.3d at 71. Usually, the greatest deference is afforded a plaintiff's choice of its home forum, *see id.; accord Piper Aircraft Co. v. Reyno,* 454 U.S. at 255–56, 102 S.Ct. 252; *Koster v. (American) Lumbermens Mut. Cas. Co.,* 330 U.S. 518, 524, 67 S.Ct. 828, 91 L.Ed. 1067 (1947), while "less deference" is afforded a foreign plaintiff's choice of a United States forum, *Iragorri v. United Techs. Corp.,* 274 F.3d at 71 (citing *Piper Aircraft,* 454 U.S. at 255–56, 102 S.Ct. 252).

■■■■ As *Iragorri* emphasized, however, these are not "abrupt or arbitrary" rules. *Id.* at 72. Rather, they illustrate "a broader principle under which the degree of deference to be given to a plaintiff's choice of forum moves on a sliding scale" depending on the degree of convenience

reflected by the choice in a given case. *Id.* at 71. "[T]he central purpose of any *forum non conveniens* inquiry" is, after all, "to ensure that the trial is convenient." *Piper Aircraft Co. v. Reyno,* 454 U.S. at 256, 102 S.Ct. 252. The reason great deference is generally afforded a plaintiff's choice of its home forum "is because it is presumed to be convenient." *Iragorri v. United Techs. Corp.,* 274 F.3d at 71, 274 F.3d 65 (citing *Piper Aircraft,* 454 U.S. at 255–56, 102 S.Ct. 252). On the other hand, "when a foreign plaintiff chooses a U.S. forum, it 'is much less reasonable' to presume that the choice was made for convenience." *Id.* (quoting *Piper Aircraft,* 454 U.S. at 256, 102 S.Ct. 252). These presumptions, however, may not apply, either at all or with full force, to forum choices in particular cases. For this reason, *Iragorri* instructs courts to consider the totality of circumstances supporting a plaintiff's choice of forum:

> The more it appears that a domestic or foreign plaintiff's choice of forum has been dictated by reasons that the law recognizes as valid, the greater the deference that will be given to the plaintiff's forum choice. Stated differently, the greater the plaintiff's or the lawsuit's bona fide connection to the United States and to the forum of choice and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States, the more difficult it will be for the defendant to gain dismissal for *forum non conveniens* .... On the other hand, the more it appears that the plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons ... the less deference the plaintiff's choice commands and, consequently, the easier it becomes for the defendant to succeed on a *forum non conveniens* motion by showing that con-

venience would be better served by litigating in another country's courts.

274 F.3d at 71–72 (footnotes omitted).

■ To facilitate totality review, *Iragorri* identified factors frequently relevant to determining whether a forum choice was likely motivated by genuine convenience: "[1] the convenience of the plaintiff's residence in relation to the chosen forum, [2] the availability of witnesses or evidence to the forum district, [3] the defendant's amenability to suit in the forum district, [4] the availability of appropriate legal assistance, and [5] other reasons relating to convenience or expense." *Id.* at 72. Circumstances generally indicative of forum shopping, that is, plaintiff's pursuit not simply of justice but of "justice blended with some harassment," *Gulf Oil Corp. v. Gilbert*, 330 U.S. at 507, 67 S.Ct. 839, include "[1] attempts to win a tactical advantage resulting from local laws that favor the plaintiff's case, [2] the habitual generosity of juries in the United States or in the forum district, [3] the plaintiff's popularity or the defendant's unpopularity in the region, or [4] the inconvenience and expense to the defendant resulting from litigation in that forum." *Iragorri v. United Techs. Corp.*, 274 F.3d at 72; *see generally* Paxton Blair, *The Doctrine of Forum Non Conveniens in Anglo–American Law*, 29 Colum. L.Rev. 1, 34 & n. 155 (1929) (advocating *forum non conveniens* dismissal when plaintiffs attempt "to sue where verdicts are largest" or "to avoid some principle of law which would impede recovery in the proper forum"). While a district court is not required to address each of these factors specifically in exercising its considerable discretion to resolve a *forum non conveniens* motion, where, as in this case, a court references a single factor, geographic convenience, to the exclusion of others more supportive of plaintiff's forum choice, a legal concern arises as to whether its exercise of discretion was

properly directed to the application of *Iragorri*'s sliding scale of deference.

■ Preliminary to discussing the *Iragorri* convenience factors that find record support in this case, we note that the district court did not ascribe any forum-shopping motives to Norex's choice of a New York forum. Of course, even when a foreign plaintiff's decision to sue in the United States is not obviously informed by forum shopping, there may be "little reason to assume that it is convenient" for the plaintiff. *Iragorri v. United Techs. Corp.*, 274 F.3d at 71. In any event, we recognize that the possibility of a RICO treble damages award might have made the choice of a United States forum attractive to Norex regardless of convenience. *See id.* (noting that when foreign plaintiff chooses a United States forum, "a plausible likelihood exists that the selection was made for forum-shopping reasons, such as the perception that United States courts award higher damages than are common in other countries").

■ Nevertheless, the record also reveals a number of circumstances demonstrating that genuine convenience did inform Norex's choice of a New York forum. Notably, it appears doubtful from the record that Norex could have perfected jurisdiction over all defendants in either of its presumptively convenient home forums, Canada or Cyprus, or even in defendants' preferred forum, Russia. Thus, Norex's decision to litigate in New York, where all defendants were amenable to suit (and where some reside or are incorporated) is properly viewed as a strong indicator that convenience, and not tactical harassment of an adversary, informed its decision to sue outside its home forum. As we noted in *Pollux Holding Ltd. v. Chase Manhattan Bank*, a "plaintiff's choice of the defendant's home forum" will not, by itself, warrant a presumption of convenience but,

when such a choice is "made to obtain jurisdiction over defendant[,] ... substantial deference would still be generally appropriate." 329 F.3d at 74. Indeed, the failure to give due consideration to this jurisdictional concern was a key factor informing our decision to vacate and remand the *forum non conveniens* dismissal in *Iragorri v. United Technologies Corp.*, 274 F.3d at 73.

The fact that defendants support their *forum non conveniens* motion with a representation that they will all submit to jurisdiction in Russia is certainly relevant at the second step of analysis to their burden to demonstrate an available adequate alternative forum, *see infra* Part II.B.2, and at the third step of analysis to the balancing of private and public interests. But it does not alter the fact that plaintiff's own choice of a New York forum rather than its home forum was motivated by genuine jurisdictional convenience and, as such, merits "substantial deference" on any sliding-scale analysis. *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d at 74.

Indeed, such deference is further supported by the district court's own recognition that the geographic convenience for Canadian-based Norex in suing in the United States rather than Russia weighs in favor of plaintiff's forum choice. Significantly, nothing in the record indicates that defendants are willing to submit themselves to jurisdiction in Norex's home forum of Canada. In any event, the undisputed fact that witnesses and evidence will be more easily available to all parties in New York than in either of Norex's home forums also supports according deference to plaintiff's choice. To the extent the district court considered witness availability as between the chosen New York forum and defendants' proposed alternative, Russia, it did so at the third step of *forum non conveniens* analysis in light of its conclu-

sion that Russia has a greater interest in the subject matter of this dispute than the United States. *See Norex Petroleum Ltd. v. Access Indus., Inc.*, 304 F.Supp.2d at 580–81. The district court observed that plaintiff had failed to demonstrate "that a critical number of crucial witnesses ... would be effectively unavailable in the Russian forum," so as to "shift the overall balance of convenience toward the American forum." *Id.* at 583. We do not here suggest that the district court's identification, at the final step of *forum non conveniens* analysis, of a superior Russian public interest in the subject of this case falls outside its discretion. It does not. But at the first step of analysis, the issue is not whether witnesses and evidence are unavailable in the defendant's preferred forum, but whether they are more available in plaintiff's chosen foreign forum than in its home forum. If, as in this case, the answer to that question is yes, then it appears likely that convenience rather than forum shopping influenced the plaintiff's choice of a foreign forum, further supporting significant deference on the *Iragorri* sliding scale.

The remaining convenience factors identified in *Iragorri* warrant no different conclusion. Certainly nothing in the record suggests that Norex gains or defendants lose any advantage in the quality of legal representation available to them by having this case litigated in New York rather than in Canada. Nor is there reason to think that the parties' relative popularity in a New York forum or the costs and burdens of litigating here favor Norex to the detriment of defendants. Accordingly, even if Norex, as a foreign corporation, is not entitled to the same high deference for its New York forum choice as a resident plaintiff, the totality of *Iragorri* factors strongly suggests that its choice warranted substantial deference.

■ In arguing to the contrary, defendants rely on *Base Metal Trading SA v. Russian Aluminum*, 253 F.Supp.2d 681 (S.D.N.Y.2003), *aff'd*, 98 Fed. Appx. 47 (2d Cir.2004). In that case, the district court decided to "afford little deference" to a plaintiff's choice of a New York forum to resolve a dispute about the purportedly illegal takeover of two Russian companies. *Id.* at 698. Preliminarily, we observe that this court is not bound by a district court decision affirmed by unpublished summary order. *See Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 370 n. 11 (2d Cir.2003) (noting that summary order disposition is not precedential). More to the point, however, *Base Metal* is distinguishable from this case because the district court's deference conclusion in *Base Metal* was not based, as here, on a presumption that a plaintiff suing outside its home forum is not motivated by genuine convenience but on an explicit finding that "[t]he record . . . points to nothing but forum shopping by the plaintiffs." *Base Metal Trading SA v. Russian Aluminum*, 253 F.Supp.2d at 696.

Because no such adverse finding was made in this case, and because the totality of circumstances suggests that Norex's decision to sue in New York was informed by genuine convenience, we are obliged to conclude that the district court erred in relying almost exclusively on the presumption that a foreign plaintiff's choice of a non-home forum is inconvenient to afford Norex's choice little deference. The deference due Norex's forum choice should have been determined in light of the sliding-scale analysis outlined in *Iragorri*.

## 2. *Adequate Alternative Forum*

■ If, on remand, the district court were to conclude that, on a sliding-scale analysis, Norex's choice of a New York forum warranted substantial deference, that would not necessarily preclude *forum non conveniens* dismissal. It would sim-ply recalibrate the balance for purposes of the remaining analysis. At the second step of analysis, however, a concern arises that is fatal to defendants' *forum non conveniens* motion.

■ To secure dismissal of an action on grounds of *forum non conveniens*, a movant must demonstrate the availability of an adequate alternative forum. *See Aguinda v. Texaco, Inc.*, 303 F.3d 470, 476 (2d Cir.2002); *Iragorri v. United Techs. Corp.*, 274 F.3d at 73. If the movant fails to carry this burden, the *forum non conveniens* motion must be denied regardless of the degree of deference accorded plaintiff's forum choice. *See PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 73 (2d Cir.1998). For this reason, courts sometimes begin their *forum non conveniens* analysis with this factor.

■ "An alternative forum is adequate if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute." *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d at 75 (citing *Piper Aircraft Corp. v. Reyno*, 454 U.S. at 254 n. 22, 102 S.Ct. 252). In urging Russia as an adequate alternative forum for Norex's claims, defendants satisfied the first prong of this test by representing that they would all submit to the jurisdiction of Russian courts in any comparable action filed against them by plaintiff. *See Norex Petroleum Ltd. v. Access Indus., Inc.*, 304 F.Supp.2d at 577; *see also Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d at 75 (finding forum adequate in part because defendant agreed to submit to jurisdiction there). Accordingly, Norex's challenge on this appeal focuses on the second prong of the test: whether Russian courts would, in fact, permit litigation of the disputed issues at the core of Norex's RICO complaint.

■ Preliminary to discussing the particulars of Norex's challenge, we note the well-established principle that "[t]he availability of an adequate alternative forum does not depend on the existence of the identical cause of action in the other forum," nor on identical remedies. *PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d at 74. The principle pertains with particular force to civil RICO actions because few. foreign jurisdictions provide such an expansive civil vehicle for parties injured by ongoing criminal schemes; even more rare are foreign provisions for the recovery of treble damages. Nevertheless, most foreign jurisdictions provide alternative legal actions to address the wrongdoing encompassed by civil RICO. *See, e.g., Transunion Corp. v. PepsiCo. Inc.*, 811 F.2d 127, 129 (2d Cir.1987) (*per curiam*) (rejecting RICO plaintiff's objection to *forum non conveniens* dismissal, holding that foreign fraud action was an adequate substitute).

In this case, the district court, upon review of expert opinions on Russian law submitted by both sides, concluded that reasonable alternatives for plaintiff's RICO claims were civil actions under Russian law for fraud or conspiracy, with compensatory damages available on various theories, including general harm and unjust enrichment. *See Norex Petroleum Ltd. v. Access Indus., Inc.*, 304 F.Supp.2d at 577–78. Norex does not dispute that Russian law recognizes these causes of action or forms of compensation. Instead, it submits that these alternative actions are not practically available to it at present because the factual crux of any fraud or conspiracy claims that it would pursue in Russia would necessarily be based—like

Norex's pending RICO action—on the illegality of defendants' actions in depriving Norex of its controlling equity interest in Yugraneft. Norex asserts that Russian courts would deem this issue precluded by the default judgment entered against it in the Know–How Case.[5]

Accepting Norex's preclusion argument, the district court nevertheless concluded that Russia was an adequate alternative forum because Norex could have litigated its claims in that jurisdiction if it had not let the opportunity to do so lapse. The court noted that Norex, which was aware of the Know–How Case while it was pending, could have sought to litigate the merits of that action. Instead, "contending that it was. not served properly with process[, Norex] declined to participate in those proceedings even to contest the court's jurisdiction, and allowed the time periods for normal appeals and collateral attack to lapse before filing the instant case in this District." *Id.* at 578. The district court further observed that "to the extent Plaintiff's claims are barred in Russian courts, they are likewise barred here since this Court would also owe deference to the Russian court decision unless it is shown that the decision was rendered in a way that violated fundamental standards of procedural fairness." *Id.*

■ Although Norex disputes certain factual assumptions underlying these conclusions, we focus only on a legal concern raised by the district court's *forum non conveniens* analysis: it appears that the district court did not, in fact, find a presently available Russian forum for Norex to pursue its claims against the defendants; rather it found the *lack* of such a forum

---

5. The district court also observed that defendants' experts suggested Norex could raise claims under Russian criminal, bankruptcy, and securities laws. *See Norex Petroleum Ltd. v. Access Indus., Inc.*, 304 F.Supp.2d at 578.

Review of the experts' opinions fails to indicate that Norex's preclusion arguments apply with any less force to these claims than to possible fraud or conspiracy claims.

excusable in light of Norex's own conduct. We here clarify that a case cannot be dismissed on grounds of *forum non conveniens* unless there is presently available to the plaintiff an alternative forum that will permit it to litigate the subject matter of its dispute. It may well be that a plaintiff that is precluded from litigating a matter in a foreign jurisdiction because of an adverse earlier judgment by its courts will not be able to pursue the claim further in the United States, but the reason for dismissal in such circumstances is our recognition of the foreign judgment in the interest of international comity, not *forum non conveniens. See Hilton v. Guyot,* 159 U.S. 113, 164, 16 S.Ct. 139, 40 L.Ed. 95 (1895) (discussing principle of international comity whereby one nation recognizes within its territory "the legislative, executive or judicial acts of another nation"); *Finanz AG Zurich v. Banco Economico S.A.,* 192 F.3d 240, 246–50 (2d Cir.1999) (discussing circumstances under which United States courts defer to the judgments of foreign courts); *see also* Arthur T. von Mehren & Donald T. Trautman, *Recognition of Foreign Adjudications: A Survey and a Suggested Approach,* 81 Harv. L.Rev. 1601 (1968).

The distinction is significant and best illustrated by considering a situation where a United States court decides *not* to recognize a foreign judgment to preclude a claim in our courts that would be barred in the alternative foreign jurisdiction. In such a case, the court, in ruling on a *forum non conveniens* motion, cannot sensibly conclude that the foreign jurisdiction provides an "adequate alternative forum" for the claim. Implicit in such a conclusion (and in any attending *forum non conveniens* dismissal) is a finding that the foreign jurisdiction is as presently capable of hearing the merits of plaintiff's claim, and therefore as convenient to the parties, as the United States court where the case is pending. But such a finding is impossible where an action that can be maintained in the United States is foreclosed in the foreign jurisdiction. For precisely this reason, in addressing a different *forum non conveniens* challenge, we ruled that "an adequate forum does not exist if a statute of limitations bars the bringing of [a] case" in a foreign forum that would be timely in the United States. *Bank of Credit & Commerce Int'l (Overseas) Ltd. v. Bank of Pakistan,* 273 F.3d 241, 246 (2d Cir.2001); *see also Kontoulas v. A.H. Robins Co.,* 745 F.2d 312, 316 (4th Cir.1984) (assuming same). Indeed, in light of our holding in *Bank of Credit & Commerce Int'l (Overseas) Ltd.,* the district court could not fault Norex for allowing Russian filing deadlines for alternative actions to lapse. The second step of *forum non conveniens* analysis does not concern itself with the reason why an alternative foreign forum is no longer available; its singular concern is the fact of present availability.

In this case, defendants failed to demonstrate that Russia affords Norex a presently available forum to litigate the disputed issues underlying its RICO complaint. Expert opinions from both sides reveal that Russian courts would likely deem the core issues underlying plaintiff's claims largely precluded by the Know–How Case. *See* Zaitsev Decl. ¶¶ 2, 86–109, 208; Kostin Dep. at 194:14–196:3, 202:8–205:9. Although a successful criminal corruption prosecution in Russia in connection with the Know–How Case might restore Norex's ability to sue defendants in that forum for their alleged damages in connection with the Yugraneft takeover, defendants have not shown that such a prosecution is pending or even likely. Accordingly, this possibility is too remote to support defendants' burden. In *Bank of Credit & Commerce Int'l (Overseas) Ltd. v. Bank of Pakistan,* we observed that the degree of certainty with which a movant must establish an adequate alternative fo-

rum may be relaxed if sufficient protection can be provided the non-movant by a conditional dismissal. *See* 273 F.3d at 247–48 (cautioning, nevertheless, that "[c]onditions cannot transform an inadequate forum into an adequate one"). In this case, the district court did not condition its *forum non conveniens* dismissal on Russia affording Norex some forum for litigation of its claims against defendants. Presumably, this was because the court realistically recognized that the record admits no such likely possibility. Under such circumstances, to base an adequate alternative forum determination on foreclosed past claims or remote future ones misperceives the defendant's burden at the second step of *forum non conveniens* analysis: to demonstrate a presently available alternative forum in which plaintiff can litigate its claim.

In sum, because defendants failed to carry their burden to demonstrate that Russia affords plaintiff a presently available adequate alternative forum, the motion to dismiss on *forum non conveniens* grounds should have been denied without consideration of the third step of analysis. *See PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d at 73.[6]

 C. *Before Recognizing the Russian Default Judgment in the Know–How Case as a Ground for Dismissal of the Pending RICO Action, the District Court Must Afford Norex a Hearing on Its Personal Jurisdiction Challenge to that Judgment*

 The district court assumed that United States recognition of the Russian court's default judgment against Norex in the Know–How Case would preclude a RICO action in this country to the same extent it precluded related actions in Russia. As already noted, such a conclusion, even if correct, does not support *forum non conveniens* dismissal. It could, however, support dismissal on grounds of international comity. *Cf. United States v. Morgan*, 380 F.3d 698, 701 n. 2 (2d Cir. 2004) ("[W]e are entitled to affirm the judgment of the district court on any ground with support in the record."). On the present record, however, the Russian default judgment cannot be given preclusive effect by an American court because Norex has not yet been heard on its personal jurisdiction challenge to that judgment.

 The law is well established that a default judgment is deemed as conclusive an adjudication of the merits of an action as a contested judgment. *See Ackermann v. Levine*, 788 F.2d 830, 842 (2d Cir.1986); *see also* 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure: Civil* § 2684, at 29 (3d ed. 1998) ("When a judgment by default is entered, it generally is treated as a conclusive and final adjudication of the issues necessary to justify the relief awarded ...."). Nevertheless, an important caveat pertains: a "defendant is always free to ignore the judicial proceedings, risk a default judgment, and then challenge that judgment on jurisdictional grounds in a collateral proceeding." *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 706, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982). Such a jurisdictional challenge can be based on inadequate personal service. *See Thompson v. Whitman*, 18 Wall. 457, 85 U.S. 457, 466, 21 L.Ed. 897 (1873) ("[A]

---

**6.** We express no view as to whether defendants could carry their burden at the second step of analysis by agreeing to submit to Canadian jurisdiction for the litigation of plaintiff's claims. Should defendants so agree, the district court can address that issue on remand.

judgment may be attacked in a collateral proceeding by showing that the court had no jurisdiction of the person, or, in proceedings *in rem,* no jurisdiction of the thing."); *see also Peralta v. Heights Med. Ctr., Inc.,* 485 U.S. 80, 84, 108 S.Ct. 896, 99 L.Ed.2d 75 (1988) ("[A] judgment entered without notice or service is constitutionally infirm."). As this court explained in *Transaero, Inc. v. La Fuerza Aerea Boliviana,* "[a] court entering a default judgment may assume that it has jurisdiction over the defendant when the defendant does not appear in court to contest the judgment," but its determination as to whether "service was proper and ... it had personal jurisdiction ... cannot be deemed final and preclusive on these questions." 162 F.3d 724, 730 (2d Cir.1998).

Applying these principles to this case, even if Norex was aware of the Know–How litigation in Russia, it was "free to ignore" those proceedings if not properly served, *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee,* 456 U.S. at 706, 102 S.Ct. 2099, and could not be faulted by an American court for doing so. More important, the Russian default judgment in the Know–How Case cannot be given preclusive effect by an American court without affording Norex the opportunity to raise a personal jurisdiction challenge. *See generally* Von Mehren & Trautman, *supra,* at 1624–25 (noting that, in cases of foreign default judgments, a court whose recognition is requested will itself determine "whether the rendering

court had jurisdiction in the international sense"); R. Doak Bishop & Susan Burnette, *United States Practice Concerning the Recognition of Foreign Judgments,* 16 Int'l L. 425, 433 (1982) (noting that, if a party did not appear in a foreign action, it "will be allowed to contest the issue of jurisdiction when the judgment is presented for recognition by an American court").[7]

The propriety of one court reviewing the proper exercise of jurisdiction by another before giving preclusive effect to a default judgment entered by the latter cannot be questioned. As Professors von Mehren and Trautman observe, such review "ensures that the rendering court was, from a disinterested point of view, an appropriate forum to determine the rights and duties of the persons affected." Von Mehren & Trautman, *supra,* at 1624. Indeed, our own court has given forceful effect to the principle in a domestic context. When a default judgment entered in the Eastern District of New York was successfully challenged for lack of personal jurisdiction in an enforcement action in the District of Columbia Circuit, *see Transaero, Inc. v. La Fuerza Aerea Boliviana,* 30 F.3d 148, 149–50 (D.C.Cir.1994), we concluded that the ruling was binding even on the Eastern District court that entered the default judgment, *see Transaero, Inc. v. La Fuerza Aerea Boliviana,* 162 F.3d at 731.

In this case, Norex vigorously challenges the exercise of personal jurisdiction by the Russian court that entered a default judgment against it in the Know–How

---

7. Article 9 of the Convention on the Recognition and Enforcement of Foreign Judgments in Civil and Commercial Matters, Feb. 1, 1971, 1144 U.N.T.S. 257, 260, similarly recognizes the right to challenge the jurisdiction of a court entering a default judgment: "In questions relating to the jurisdiction of the court of the State of origin, the authority addressed shall be bound by the findings of fact on which that court based its jurisdiction, *unless the decision was rendered by default"*

(emphasis added). Although the United States is not a signatory to this convention, Professors von Mehren and Trautman note that the United States and United Kingdom representatives to the drafting conference thought that "in international recognition practice, jurisdictional findings should be open in principle to review even if made after a contest." Von Mehren & Trautman, *supra,* at 1627.

Case. Norex insists that it was not properly served through diplomatic channels as required by the legal assistance treaty then in effect between the Republic of Cyprus, Norex's place of incorporation, and the Union of Soviet Socialist Republics. To the extent the Russian court, in entering the default judgment, found that Norex had been properly served in Cyprus by mail pursuant to Article 10 of the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, *see generally* 20 U.S.T. at 363, 658 U.N.T.S. at 169–71, there appears to be a legal issue as to whether this convention had taken effect in Russia at the time of service as well as a factual issue as to whether the mailed envelopes in fact contained the notice required even by the aforementioned convention on service. We express no opinion as to the merits of Norex's jurisdictional challenge. We note only that the district court could not rely on the preclusive effect of the Russian default judgment as a ground for dismissing Norex's RICO complaint without affording plaintiff an opportunity to be heard on its personal jurisdiction challenge to that default judgment. The parties remain free to pursue this matter further on remand.

### III. *Conclusion*

To summarize:

(1) Because several factors in the record indicate that Norex's choice of a New York forum was motivated by genuine convenience, the district court, in reviewing a motion for *forum non conveniens* dismissal, could not rely simply on a presumption to the contrary based on the fact that New York was not Norex's home forum. Rather, it was required to consider the totality of the evidence in applying the sliding scale of deference approved by this court in *Iragorri v. United Technologies Corp.,* 274 F.3d at 70–73.

(2) A district court cannot find the adequate alternative foreign forum required for *forum non conveniens* dismissal unless the moving party demonstrates that the proposed foreign jurisdiction is presently prepared to allow the claims at issue to be litigated. Where, as in this case, the proposed foreign forum, Russia, would deem plaintiff's claims precluded by a prior adverse default judgment, a United States court cannot conclude that the foreign jurisdiction presently affords an adequate alternative forum.

(3) Principles of international comity permit a United States court to recognize the preclusive effect of a foreign judgment as a ground independent from *forum non conveniens* for dismissing a plaintiff's claim. But where the foreign judgment was entered on default, recognition cannot be afforded without resolving any jurisdictional challenge a party may raise to the judgment, including a challenge to personal jurisdiction based on improper service.

The judgment granting dismissal of this action on grounds of *forum non conveniens* is VACATED and the case REMANDED for further proceedings consistent with this opinion, including further proceedings relating to the preclusive effect of a Russian default judgment on Norex's reinstated RICO complaint.