**POLLUX HOLDING LTD.,**
Plaintiff–Appellant,

v.

**THE CHASE MANHATTAN BANK,**
Defendant–Appellee.

**Springwell Navigation Corporation,**
Plaintiff–Appellant,

v.

**The Chase Manhattan Bank,**
Defendant–Appellee.

No. 01–7488, 01–7492.

United States Court of Appeals,
Second Circuit.

Argued Oct. 7, 2002.

Decided: May 1, 2003.

Mark S. Arisohn, New York, New York (Barry Michael Okun, Goodkind Labaton Rudoff & Sucharow LLP, New York, New York, of counsel), for Plaintiff–Appellant Pollux Holding Ltd.

Erik S. Jaffe, Erik S. Jaffee, P.C., Washington, D.C. (Stephen D. Hoffman, Siller Wilk LLP, New York, New York, of counsel), for Plaintiff–Appellant Springwell Navigation Corp.

Thomas C. Rice, New York, New York (Jennifer N. Colao, Laura W. Sawyer, Hillary C. Mintz, Simpson Thacher & Bartlett, New York, New York; Michael A. O'Connor, J.P. Morgan Chase & Co., Legal Department, New York, New York, of counsel), for Defendant–Appellee The Chase Manhattan Bank.

Before: WALKER, Chief Judge, CARDAMONE, and STRAUB, Circuit Judges.

CARDAMONE, Circuit Judge.

On this appeal we revisit the doctrine of *forum non conveniens*. That doctrine affords a trial court discretion in a case over which it has jurisdiction to decline to exercise it, whenever it appears that such case may be more appropriately tried in another forum, either for the convenience of the parties or to serve the ends of justice. The focus of any *forum non conveniens* inquiry, as the term itself suggests, is to ensure that the place where a trial is held is convenient, that is, that the forum fits the needs and is suitable to the circumstances of the case.

Plaintiff Pollux Holding Ltd. (Pollux) and plaintiff Springwell Navigation Corporation (Springwell) (collectively plaintiffs or appellants), are Liberian corporations that serve as personal investment vehicles for wealthy Greek individuals. Each filed a separate complaint against The Chase Manhattan Bank (Chase or bank) in the United States District Court for the Southern District of New York in December 1999 before Judge Kimba M. Wood. The complaints allege numerous causes of action—including negligent misrepresentation, fraud, breach of contract, breach of fiduciary duty, negligence, negligent supervision, and violations of English statutory law—all of which are connected to losses stemming from plaintiffs' investments in derivative securities sold by

Chase. Judge Wood granted defendant Chase's motion to dismiss both complaints on the grounds of *forum non conveniens,* concluding that England was a more appropriate forum. Plaintiffs filed timely appeals that we heard in tandem.

## BACKGROUND

### A. *The Parties*

Pollux and Springwell are both organized under the laws of Liberia and each maintains its principal place of business in Greece. Both plaintiffs are personal investment companies serving wealthy Greek nationals engaged in the shipping business; Pollux for Diamantis Diamantides, and Springwell for Adam and Spiros Polemis.

Chase is a New York banking corporation headquartered in New York City, but with numerous overseas branches through which it conducts business. One such branch is located in London (Chase London). Chase is also affiliated with a number of banking companies including: Chase Investment Bank Limited (Chase Limited), a United Kingdom (U.K.) affiliate engaged in emerging market sales; Chase Manhattan International Limited (Chase International Limited), also a U.K. affiliate that took over managing emerging markets-based trading from Chase Limited in 1993; Chase Manhattan Securities (C.I.) Limited (Chase Securities), a Jersey, Channel Islands affiliate; and Chase Manhattan Bank International (Chase International), a bank organized under the laws of Russia. Chase also operates Private Bank, headquartered in New York, with a branch in London.

Both Diamantides and the Polemises have been banking with Chase for many years. In 1990 Diamantides established a relationship with Chase's Private Bank in London. Diamantides also opened an account with Chase London. The Polemis family, which has been in the shipping business for more than 100 years, has been a client of Chase's Global Shipping Group for almost 50 years. When Springwell was established by Adam and Spiros Polemis in 1986, it also established a banking relationship with Chase London. The Polemises also have a relationship with Chase's Private Bank in London that began in the late 1980s.

In the early 1990s, plaintiffs began to invest in emerging market securities. These emerging market investment products were sold to them by Justin Atkinson, a London-based salesperson who was employed first at Chase Limited and, later, at Chase International Limited. Plaintiffs initially focused on Latin American investments, but subsequently expanded their portfolio to include investments in Russian securities.

### B. *The Notes*

In 1996 Chase International Limited developed a complex derivative instrument (Notes) based on Gosudarstvenniye Kratkosrochniye Beskuponniye Obligatsii (GKOs), short-term, zero coupon, rouble denominated bonds issued by the Russian Ministry of Finance. The Notes, which were issued by defendant's affiliate Chase Securities, were linked to the performance of a particular issue of GKOs and incorporated forward foreign exchange contracts that hedged against devaluation of the rouble. Plaintiffs allege these GKOs were a pyramid scheme where the funds from the sale of new Notes were used to redeem those that matured. Chase Securities did not purchase the underlying GKOs itself; instead, investments in GKOs were made by Chase International Limited which had a special account with Chase International and other Russian banks that allowed it to purchase GKOs as a foreign investor.

Pollux purchased 17 Notes between April 1997 and April 1998 and Springwell purchased 42 Notes between April 1996 and July 1998. Initially plaintiffs purchased the Notes outright, but later financed 60 to 70 percent of the purchase price—including all of the Notes at issue in this litigation—through Chase London. In connection with this financing plaintiffs executed repurchase agreements, under the terms of which Pollux and Springwell bought the Notes, but immediately resold them to Chase London. The agreements further provided that plaintiffs would repurchase the Notes at maturity for the same price paid for them by Chase London, plus a finance charge. · After purchasing the Notes in London, plaintiffs transferred the purchase funds to Chase Securities' account at Chase in New York. The purchase confirmations and related documentation for the Notes were generated by the New York bank and New York officials were involved in various aspects of the sales of the Notes.

Both the Notes themselves and the repurchase agreements contain language relevant to issues of choice of law and jurisdiction. The Notes elect both English law and exclusive English jurisdiction, stating

> This Note shall be governed by, and construed and interpreted in accordance with, the laws of England. Any legal action or proceeding with respect to this Note ... may be instituted exclusively in the English courts and, by execution and delivery of this Note, the parties hereto irrevocably submit to the exclusive jurisdiction of such court in any such action or proceeding ...

The confirmation documents generated for each Note contain a summary "terms and conditions" sheet that specifies English law as governing law, but does not address forum selection. The repurchase agreements designate English law as controlling

and provide for the parties' consent to submit to English courts' jurisdiction, but not to the exclusion of courts "of any other country of competent jurisdiction."

Plaintiffs' initial investments in the Notes were profitable, yielding returns of 11 to 14 percent for Pollux and, 15 percent on average, for Springwell. In August 1998 the GKO market collapsed because the Russian government defaulted on its internal debt, devalued the rouble, and restricted the exchange of roubles into United States dollars. Pollux's losses on the devalued Notes exceed $40 million; Springwell lost almost $88 million. Following this failure, defendant attempted to negotiate a restructuring of the transactions and a settlement with plaintiffs through various personal meetings in London, and through facsimile messages and telephone conversations.

### C. Prior Legal Proceedings

When these efforts proved unsuccessful, plaintiffs on December 7, 1999 filed complaints against Chase. Their claims fall into two categories: (1) allegations and causes of action involving the malfeasance of the bank and its agents in recommending and selling the Notes, and (2) the bank's alleged failure to manage the Notes and related hedge contracts, after the collapse, in a manner designed to minimize plaintiffs' losses. Plaintiffs seek damages, declaratory relief, an accounting and rescission of the repurchase agreements.

Defendant moved to dismiss on the grounds of *forum non conveniens* asserting that England is a more convenient forum for this litigation. Plaintiffs, in response, moved for discovery on issues related to defendant's motion to dismiss, but that motion was denied. In a subsequent judgment entered on · April 5, 2001, the district court granted defendant's motion

to dismiss both complaints on the grounds of *forum non conveniens.*

On appeal plaintiffs urge that the district court erred by not giving their choice of forum sufficient deference, and by improperly weighing the private and public interest factors that are typically considered in *forum non conveniens* cases. Inasmuch as plaintiffs have misconstrued our recent *forum non conveniens* decisions, and have failed to identify any clear error in the trial court's balancing of the various convenience factors, we affirm.

## DISCUSSION

### I Standard of Review

 A district court's decision to dismiss by reason of *forum non conveniens* is confided to the sound discretion of the district court, to which substantial deference is given. *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 257, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). Such a decision may be overturned only when we believe that the trial court has clearly abused its discretion. *See Scottish Air Int'l, Inc. v. British Caledonian Group, PLC,* 81 F.3d 1224, 1232 (2d Cir.1996). Discretion is abused in the context of *forum non conveniens* when a decision (1) rests either on an error of law or on a clearly erroneous finding of fact, or (2) cannot be located within the range of permissible decisions, *see Zervos v. Verizon N.Y., Inc.,* 252 F.3d 163, 169 (2d Cir.2001), or (3) fails to consider all the relevant factors or unreasonably balances those factors. *See Piper Aircraft,* 454 U.S. at 257, 102 S.Ct. 252.

 An evaluation of a motion to dismiss on the grounds of *forum non conveniens* proceeds in several stages. As comprehensively explained in *Iragorri v. United Technologies Corp.,* 274 F.3d 65 (2d Cir.2001) (en banc), the "first level of inquiry" pertains to "determining whether the plaintiff's choice [of forum] is entitled to more or less deference." *Id.* at 73. A determination of what degree of deference is owed a plaintiff's choice of forum does not dispose of a *forum non conveniens* motion, however, because even after determining what deference to accord the plaintiff's choice, a district court still must conduct the analysis set out in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). *See Iragorri,* 274 F.3d at 73. Thus, the next level of inquiry requires a court under *Gilbert* to determine whether an adequate alternative forum exists. When such is the case the court must go to the third step and balance factors of private and public interest to decide, based on weighing the relative hardships involved, whether the case should be adjudicated in the plaintiff's chosen forum or in the alternative forum suggested by the defendant. *Gilbert,* 330 U.S. at 507–09, 67 S.Ct. 839.

### II Deference to Plaintiff's Choice of Forum

Appellants aver that Judge Wood erred by affording their choice of forum too little deference and by granting Chase's motion to dismiss their complaints on *forum non conveniens* grounds. They assert the trial court committed errors of law by (1) applying an incorrect standard for deference; (2) underestimating the import of United States treaties with Liberia and Greece; and (3) failing to credit plaintiffs for initiating suit in New York, defendant Chase's "home forum." We take up each of these arguments in turn.

#### A. *Standard Used*

 It is familiar law that a plaintiff's choice of forum is entitled to substantial deference. As explained in *Iragorri,* when reviewing a motion to dismiss for *forum non conveniens* there is an assumption

that the plaintiff's choice of forum will stand unless the defendant can demonstrate that reasons exist to afford it less deference. 274 F.3d at 70–71. In fact, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gilbert*, 330 U.S. at 508, 67 S.Ct. 839.

◼◼◼ Nonetheless, circumstances may alter the degree of deference given a plaintiff's forum choice. For example, when a plaintiff sues in his home forum, that choice is generally entitled to great deference, *Koster v.(Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524, 67 S.Ct. 828, 91 L.Ed. 1067 (1947), because it is presumed to be convenient. *See Piper Aircraft*, 454 U.S. at 255–56, 102 S.Ct. 252. In contrast, when a foreign plaintiff sues in a United States forum such choice is entitled to less deference because one may not easily presume that choice is convenient. *Id.* at 256, 102 S.Ct. 252. In such circumstances, it is more likely that forum-shopping for a higher damage award or for some other litigation advantage was the motivation for plaintiff's selection. Even absent those forum-shopping considerations, there still is no reason to assume a U.S. forum is convenient for a foreign plaintiff's suit. As *Iragorri* sought to make clear, the degree of deference assigned to plaintiff's choice depends on the specific facts of the case and may be viewed as operating along a "sliding scale"

> The more it appears that a domestic or foreign plaintiff's choice of forum has been dictated by reasons that the law recognizes as valid, the greater the deference that will be given to the plaintiff's forum choice.... [T]he greater the plaintiff's or the lawsuit's bona fide connection to the United States and to the forum of choice and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United

States, the more difficult it will be for the defendant to gain dismissal for *forum non conveniens.*

274 F.3d at 71–72. Absent proof that plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons, factors relating to convenience or expense generally weigh heavily in favor of the plaintiff's choice.

Although at the time of its decision the district court did not have the benefit of our *Iragorri* decision, its analysis on the proper degree of deference to be afforded plaintiffs' choice of forum is consistent with the standards set out in that case. Judge Wood began her deference analysis by noting that she must give deference to the plaintiff's choice of forum and that the appropriate level of deference depended on the plaintiffs' relationship with the Southern District of New York. She recognized that a choice of home forum by an American citizen is given substantial deference, while a foreign plaintiff's choice of a United States forum typically is given less deference.

Applying these standards to appellants' choice, the district court assumed, arguendo, that because of a treaty with Liberia granting access to United States courts, plaintiffs' choice of a United States forum was entitled to the same deference as that of United States citizens. Yet, because the level of deference given to a plaintiff's choice of forum depends on the *bona fide* connection the plaintiff has with that forum, *see DiRienzo v. Philip Servs. Corp.*, 294 F.3d 21, 28 (2d Cir.2002), the district court noted that plaintiffs are not residents of the United States and have no connections—other than wire transfers, faxes and the involvement of Chase officials in the sales of the GKO Notes—with the Southern District of New York. Accordingly, it ruled that their choice of forum was not entitled to particularly strong deference.

In other words, it was given a lesser degree of deference. An analogy may give that notion more definition: were plaintiffs to have claimed a family relationship with their chosen forum of New York, it could not be said—in light of the wire transfers, faxes and involvement in the sale of Notes there—that there is no relationship at all. But the faint family relationship plaintiffs have to the Southern District of New York in the present case is akin to that of a distant cousin who enjoys only a lesser degree of family relationship.

### B. *Treaty Obligations*

■ In contesting the *forum non conveniens* dismissal of their suit, appellants make much of treaty obligations between the United States and Greece and the United States and Liberia, granting to the nationals of each of those countries reciprocal free access to the courts of the other. *See* Treaty of Friendship, Commerce and Navigation, Aug. 3, 1951, U.S.-Greece, 5 U.S.T. 1829; Treaty of Friendship, Commerce, and Navigation, Aug. 8, 1938, U.S.-Liber., 54 Stat. 1739. These treaties, plaintiffs insist, entitle their choice of forum to the same deference as the deference afforded to a U.S. citizen's choice to bring suit in his or her home forum. Although plaintiffs correctly assert that a *forum non conveniens* analysis must take into account relevant treaty obligations, *see Iragorri*, 274 F.3d at 69 n. 2, their arguments miscomprehend the treaties at issue and our prior relevant decisions.

■ As an initial matter, the district court found and we agree that, because the two named plaintiffs in this case are Liberian corporations, any reference to a treaty between Greece and the United States is irrelevant. We are aware that appellants are owned by Greek nationals, but since plaintiffs are suing as corporations and not in an individual capacity, the United States treaty with Greece has no application.

■ With respect to the United States treaty with Liberia, the treaty merely grants the citizens of each country "freedom of access" to the courts of the other country. Treaty of Friendship, Commerce, and Navigation, Aug. 8, 1938, U.S.-Liber., art. I, 54 Stat. 1739, 1740 ("The nationals of each [country] shall enjoy freedom of access to the courts of justice of the other ... in all degrees of jurisdiction established by law."). The treaty stops well short of granting the nationals of both countries "access to each country's courts on terms no less favorable than those applicable to nationals of the court's country." *See Farmanfarmaian v. Gulf Oil Corp.*, 588 F.2d 880, 882 (2d Cir.1978). As we have noted before, "[h]istory and practice ... teach that a principle of equal access must be explicitly adopted." *Murray v. British Broad. Corp.*, 81 F.3d 287, 291 (2d Cir.1996).

Further, in prior *forum non conveniens* cases where we have required that a foreign plaintiff be treated on terms no less favorable than those applicable to U.S. nationals, the foreign plaintiff was a beneficiary of a treaty with an explicit provision providing national access or treatment. *See Blanco v. Banco Indus. De Venezuela, S.A.*, 997 F.2d 974, 981 (2d Cir.1993) (acknowledging a treaty with Venezuela that "accords its nationals access to our courts equivalent to that provided American citizens") (citing Treaty of Peace, Friendship, Navigation and Commerce, Jan. 20, 1836, U.S.-Venez., art. 13, 8 Stat. 466, 472); *Irish Nat'l Ins. Co., Ltd., v. Aer Lingus Teoranta*, 739 F.2d 90, 91–92 (2d Cir.1984) ("Under the terms of a separate treaty between the United States and Ireland, appellant was entitled to 'national treatment with respect to ... having access to the courts of justice.'") (quoting Treaty of

Friendship, Commerce and Navigation, Jan. 21, 1950, U.S.-Ir., art. VI(1)(c), 1 U.S.T. 785, 790–91); *Farmanfarmaian*, 588 F.2d at 882 (citing Treaty of Amity, Economic Relations, and Consular Rights, Aug. 15, 1955, U.S.-Iran, 8 U.S.T. 899).

Because "freedom of access" cannot be taken to mean "national access," the Liberian treaty does not afford the plaintiffs' choice of a United States forum the same deference as that afforded the choice of a U.S. citizen. Instead, Pollux and Springwell's choice of forum only merits the lesser degree of deference typically afforded foreign plaintiffs. This rule is not intended to create difficulties for foreign plaintiffs, but is based instead on realistic doubts about the ultimate convenience of a foreign plaintiff's choice to litigate in the United States. *See Piper Aircraft*, 454 U.S. at 255–56, 102 S.Ct. 252; *Murray*, 81 F.3d at 290.

■ Even assuming that, by treaty, plaintiffs were entitled to access American courts on the same terms as American citizens (an assumption made by the district court to the plaintiffs' benefit), our case law does not support plaintiffs' assertion that such a treaty would require that their choice of forum be afforded the same deference afforded to a U.S. citizen bringing suit in his or her home forum. Such a proposition impermissibly conflates citizenship and convenience, and assigns an artificial weight to citizenship.

■ A court considering a motion for dismissal on the grounds of *forum non conveniens* does not assign "talismanic significance to the citizenship or residence of the parties," *see Alcoa S.S. Co., Inc. v. M/V Nordic Regent*, 654 F.2d 147, 154 (2d Cir.1980) (en banc), and there is no inflexible rule that protects U.S. citizen or resident plaintiffs from having their causes dismissed for *forum non conveniens. See Wiwa v. Royal Dutch Petroleum Co.*, 226

F.3d 88, 102 (2d Cir.2000). As we plainly stated in *Iragorri*, "while [a] plaintiff's citizenship and residence can serve as a proxy for, or indication of, convenience, neither the plaintiff's citizenship nor residence ... necessarily controls the outcome." 274 F.3d at 74. Significantly, we suggested that the selection of a U.S. forum by a U.S. citizen living abroad would be entitled to less deference than the choice of the same forum by a citizen residing in the forum because with respect to the expatriate U.S. citizen "it would be less reasonable to assume the choice of forum is based on convenience." *Id.* at 73 n. 5.

■ Consistent with this logic, appellants cannot successfully lay claim to the deference owed an American citizen or resident suing in her home forum. Plaintiffs are only entitled, at best, to the lesser deference afforded a U.S. citizen living abroad who sues in a U.S. forum. This was precisely the level of deference the district court assigned plaintiffs' choice of forum: it gave them the same initial deference in choosing a United States court as it would a United States citizen discounted by the fact that plaintiffs are not residents of the United States.

### C. *Suit in Defendant's Home Forum*

Pollux and Springwell challenge the district court's deference analysis on a final ground, declaring that their choice of the Southern District of New York is due particular deference because it is defendant Chase's home forum. Springwell maintains, citing *Iragorri*, that when a plaintiff sues in the defendant's home forum, that choice should be deemed reasonable and receive the same presumptive deference as that given when a resident plaintiff sues in its own home forum. In its attempt to create a *per se* rule favoring litigation in

the defendant's home forum, Springwell misconstrues *Iragorri.*

In *Iragorri* we addressed the following question: "what degree of deference should the district court accord to a United States plaintiff's choice of a United States forum where that forum is different from the one in which the plaintiff resides." *Id.* at 69. In answering this question we said that "[i]t is not a correct understanding of the rule to accord deference only when the suit is brought in the plaintiff's home district." *Id.* at 73. We observed that "[o]ne of the factors that necessarily affects a plaintiff's choice of forum is the need to sue in a place where the defendant is amenable to suit" and that "[w]here a U.S. resident leaves her home district to sue the defendant where the defendant has established itself and is thus amenable to suit, this would not ordinarily indicate a choice motivated by desire to impose tactical disadvantage on the defendant." *Id.* at 72–73.

 Although a plaintiff's choice of forum will not necessarily merit less deference because plaintiff is suing outside her home forum, such a choice made to obtain jurisdiction over defendant is an instance where substantial deference would still be generally appropriate. But, it is an untenable leap of logic to jump from that holding to the blanket assertion that a plaintiff's choice of forum deserves presumptive deference simply because the chosen forum is defendant's home forum. It is reasonable for a court to assume that a plaintiff's choice of her own home forum is motivated by convenience. The plaintiff's choice of the defendant's home forum provides a much less reliable proxy for convenience. Bearing in mind that litigants rarely are concerned with promoting their adversary's convenience at their own expense, a plaintiff's choice of the defendant's home forum over other fora where

defendant is amenable to suit and to which the plaintiff and the circumstances of the case are much more closely connected suggests the possibility that plaintiff's choice was made for reasons of trial strategy. Accordingly, a plaintiff's choice to initiate suit in the defendant's home forum—as opposed to any other where the defendant is also amenable to suit—only merits heightened deference to the extent that the plaintiff and the case possess *bona fide* connections to, and convenience factors favor, that forum.

 The notion that underlies our refusal automatically to grant any particular deference to a plaintiff's choice of the defendant's home forum is illustrated in this case. The fact that New York is Chase's home jurisdiction does not show that plaintiffs' decision to bring suit here was driven by considerations of convenience. For purposes of our deference analysis it is much more critical, as already noted, that other than the earlier mentioned wire transfers, faxes and the sale of the GKO Notes, plaintiffs offered no proof that they have connections to the United States and failed to demonstrate that New York is convenient for them. It is also a key point that the district court found that plaintiffs' declarations make it clear that their interactions with Chase were centered in London. Plaintiffs' decision to initiate suit in Chase's home forum notwithstanding, the plaintiffs and their case have only a faint connection to the United States and thus their choice of forum does not merit the same substantial deference afforded to a suit initiated in a plaintiff's home forum.

### III *Gilbert* Analysis

After making an initial assessment of the deference due the plaintiff's choice of forum, a district court must next determine whether an adequate alternative forum exists and, if so, then balance private

and public interest factors to ascertain whether the case should be adjudicated in plaintiff's chosen forum or in the alternative forum proposed by defendant. *See Gilbert*, 330 U.S. at 507–09, 67 S.Ct. 839. As our analysis below indicates, the district court properly determined England to be an adequate alternative forum and properly weighed the prescribed private and public interest factors that supported its decision to dismiss the complaints.

■■■ The issue of whether or not the bank's proposed alternative forum of England is adequate need not detain us long. An alternative forum is adequate if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute. *Piper Aircraft*, 454 U.S. at 254 n. 22, 102 S.Ct. 252; *Capital Currency Exch., N.V. v. Nat'l Westminster Bank PLC*, 155 F.3d 603, 609 (2d Cir.1998). Chase agreed in the trial court to submit to the jurisdiction of England as a condition of dismissal and, with several of appellants' claims asserted under English statutory law, there can be no doubt that England permits litigation to resolve commercial disputes of the type presented in this case. Since plaintiffs have not asserted that English courts are in any way inadequate and because we have expressed high regard for those courts' fairness and commitment to the rule of law, *see Wiwa*, 226 F.3d at 101, it certainly cannot be said that it was an abuse of discretion to hold that England was an adequate alternative forum.

■■■ The next issue under *Gilbert* is to weigh defendant's hardships if jurisdiction is retained in the forum of plaintiff's choice against plaintiff's hardships if the motion to dismiss is granted and plaintiff is forced to begin suit anew in a different forum. *Gilbert* sets out private and public interest factors to be considered when balancing the relative hardships and conveniences.

The private interest factors relevant here include (1) the relative ease of access to sources of proof, (2) availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing witnesses, and (3) all other practical problems that make trial of a case easy, expeditious and inexpensive. *Gilbert*, 330 U.S. at 508, 67 S.Ct. 839.

■■■ In analyzing the private interest factors the district court found that only one, the availability of compulsory process, favored one forum over the other in the case at hand. With respect to the ease of access to sources of proof, for example, the trial court observed that there were undoubtedly relevant documents in both New York and London but that, in any event, technological advances have minimized the burden of transporting documentary evidence. Similarly, with respect to the cost of obtaining witnesses, the court observed that most of the witnesses likely to appear at trial reside in England, but found that neither Chase nor appellants offered evidence that the cost of obtaining witnesses in either forum would be prohibitive. Although Judge Wood was not persuaded that it would be exorbitantly expensive to obtain witnesses in either forum, she did observe that Chase identified several key witnesses whose testimony can be compelled only in England while plaintiffs have not demonstrated that any material witnesses would be unavailable there. Thus, she ruled that this factor weighs heavily in favor of dismissal. Our review of that record does not show any private interest factors' findings to be clearly erroneous.

Appellants do little to contest these findings other than to suggest that, had the district court granted their motions for discovery on forum-related issues, they would have been able to offer more evidence tilting the consideration of private interest factors in their favor. Pollux, in

fact, challenges the district court's denial of its forum-related discovery motion, arguing on appeal that the trial court abused its discretion. Plaintiffs have not articulated any persuasive reason for us to believe that the sought after discovery would have yielded additional support for their position. Accordingly, we find no abuse of discretion in the district court's decision to deny plaintiffs' motions and to decide the *forum non conveniens* motion based on the existing record.

Turning to the public interest factors, the Supreme Court has explained

> Factors of public interest also have place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.

*Gilbert,* 330 U.S. at 508–09, 67 S.Ct. 839.

Although several of the public interest factors were not found to favor adjudication in either New York or London, those factors that were found to weigh in favor of a particular forum weighed in favor of the latter. For instance, the trial court found London has a stronger local interest in the dispute. Since the Notes were purchased by plaintiffs in England the district court reasoned that England has a greater interest in regulating investment activity that occurs there, citing the plaintiffs' invocation of English securities law in their complaints as underscoring the point. The trial court gave two additional reasons why England possesses the stronger local interest: it stated that the alleged fraud and misrepresentations primarily occurred there, and that plaintiffs' allegations of breach of contract and breach of fiduciary duty arise out of contracts entered into in London. In contrast, Judge Wood was not persuaded that New York's generalized interest in overseeing the bank, which is headquartered in New York, created any strong local interest. With small local interest in the dispute, it would be burdensome for a New York jury to hear and decide this case.

Even more than the local interest or jury burden factors, Judge Wood found that choice of law considerations favor adjudication in England. Given that most of the relevant conduct occurred in England, English law would apply to the preponderance of plaintiffs' tort claims. Because the financing agreements relating to the Notes contained choice of law provisions electing English law, English law would likely apply to all of the plaintiffs' contractual claims as well. And, English law would obviously apply to plaintiffs' claims initiated pursuant to English securities law. The only claims the district court considered likely to be construed under New York law are the plaintiffs' negligent supervision claims and conversion claims. Yet, owing to the fact that the overwhelming majority of plaintiffs' claims necessitate the application of English law, the trial court concluded that choice of law considerations strongly tipped in favor of litigation in England.

Although appellants maintain that the findings with respect to the public interest

factors are erroneous and that these findings, when coupled with the deference and private interest analysis, erroneously led the district court to dismiss their suit on the grounds of *forum non conveniens,* our review has not convinced us that the trial court abused its discretion. As a consequence, we see no reason on the facts or law to disturb its dismissal of plaintiffs' complaints on grounds of *forum non conveniens.*

## CONCLUSION

Accordingly, the judgment of the district court is affirmed.