**MIRIAN RAMÍREZ DE ARELLANO,**
**Plaintiff,**

v.

**STARWOOD HOTELS & RESORTS**
**WORLDWIDE, INC.,**
**Defendant.**

**No. 05 CIV. 10848(CM).**

United States District Court,
S.D. New York.

Aug. 17, 2006.

---

**11.** Under the current New York Penal Law, Sections 130.45 and 130.50, the word "sod-

omy" has been changed to "criminal sexual act."

Roger Juan Maldonado, Balber, Pickard, Battistoni, Maldonado, & Van Der Tuin, New York, NY, for Plaintiff.

Peter Thomas Shapiro, Jones Hirsch Connors and Bull, P.C., New York, NY, for Defendant.

## DECISION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS THE ACTION ON THE GROUND OF *FORUM NON CONVENIENS*

McMAHON, District Judge.

### I. Introduction

Plaintiff's claims stem from the alleged theft of her valuables from a safe in her room at the Westin Palace Hotel in Madrid, Spain, on January 5, 2005. Defendant, a Maryland corporation that appears to be well up the ownership chain of that hotel, moves for dismissal pursuant to the doctrine of *forum non conveniens*, claiming that a Spanish court would provide a more appropriate forum. For the following reasons, I deny Defendant's motion without prejudice to its renewal under the circumstances described below.

### II. Underlying Facts

█ On a motion to dismiss for *forum non conveniens*, a court considers not only the allegations of the pleadings but all evidence before it, and does not presume the facts pleaded to be true. *In re Livent, Inc. Sec. Litig.*, 78 F.Supp.2d 194, 200 (S.D.N.Y.1999).

Plaintiff is a United States citizen and a resident of San Juan, Puerto Rico. Defendant is a corporation incorporated in Maryland and having its principal place of business in White Plains, New York. The complaint alleges that Defendant owns numerous hotels located throughout the world, including the Westin Palace Hotel ("the Palace") in Madrid, Spain, at which the theft of her valuables allegedly occurred. *Id.* ¶ 5.

Defendant asserts that the Palace is actually owned by Ciga International Hotels Corporation, SL ("Ciga"), an entity organized under the laws of Spain which is not a direct subsidiary of Defendant. *See* Defendant's Memorandum of Law in Support of Motion to Dismiss ("Defendant's Memo") at 3. According to an affidavit submitted by Defendant, Defendant is the 100 percent owner of Sheraton Holding Corporation, which is the 100 percent owner of the Sheraton Corporation, which is the 100 percent owner of Sheraton International, Inc. (a Delaware Corporation with its principal place of business in Boston), which is the 100 percent owner of Starwood CIGA Holdings LLC. That entity is the majority shareholder of Starwood Hotels (Italia) SRL, which is the 100 percent owner of CIGA SRL, which is the 100 percent owner of Landia–Lux SARL, which is the 100 percent owner of CIGA International Management B.V., which is the 100 percent owner of Nacional Hotelera SL. Nacional Hotelera is also the majority shareholder of CIGA International Hotels Corporation, SL, which in turn owns the Palace Hotel in Madrid. Nacional Hoterlera also operates the food and beverage service at the Hotel. *See* Chelgren Aff. ¶ 5.

Plaintiff and her husband have been frequent guests at the Palace over the course of several years. Complaint ¶ 7. During their stays, Plaintiff would bring with her

fine jewelry that she would wear during festivities at the Palace and elsewhere in Madrid. *Id.* ¶ 7. During her stays at the Palace, Plaintiff would keep her jewelry in the safe located in her hotel room, on the advice of Palace employees. *Id.* ¶ 8.

Plaintiff and her husband stayed at the Palace from approximately December 29, 2004 to January 7, 2005. *Id.* ¶ 9. At all times during her stay, until the alleged theft, Plaintiff kept her fine jewelry and other valuables locked in her hotel room safe. *Id.* ¶ 12. On December 31, 2004, Plaintiff wore fine jewelry and other valuables while attending a New Year's Eve celebration hosted by the Palace. *Id.* ¶ 11.

On January 5, 2005, Plaintiff and her husband contacted Palace employees and asked that their room be made up while they dined with friends. *Id.* ¶ 13. Before leaving for dinner at approximately 9:00 p.m., Plaintiff checked to make sure that both the room safe and the room door were locked. *Id.* ¶ 14.

Upon the couple's return approximately two hours later, Plaintiff's husband tried to unlock their room door but found that the door opened without engaging the unlocking mechanism. *Id.* ¶ 15. When they returned to their hotel room, Plaintiff and her husband observed (i) that several clothes drawers were open and appeared to have been ransacked, (ii) that the door to the room safe was ajar, and (iii) that all of the jewelry and other valuables were missing. *Id.* ¶ 16.

Plaintiff's husband immediately notified Palace employees about the burglary. *Id.* ¶ 17. A Palace employee interviewed Plaintiff and her husband before accompanying Plaintiff to the police station where Plaintiff filed a report. *Id.* ¶ 18. In making her claim to the Palace employee and the police, Plaintiff identified nine different items that had been stolen, including fine jewelry and a valuable watch, some of which had great sentimental value. *Id.* ¶ 19. Plaintiff further informed the Palace employee and the police about her earlier request that an employee make up the room while she was at dinner, as well as about their observation that there appeared to be no forced entry into either their room or the safe. *Id.* ¶ 20.

Plaintiff brings three causes of action against Defendant on the theory that it owed her a duty of care because she was a guest in the Palace and Defendant owns the Palace. *Id.* ¶¶ 5, 24. Plaintiff alleges Defendant violated its duty of care to her by failing to implement the policies, procedures and practices necessary, inter alia, (1) to secure her hotel room and safe, *id.* ¶ 25, (2) to properly screen and supervise Palace employees to avoid illegal thefts by employees of property belonging to Palace guests, *id.* ¶ 30, and (3) to ensure that Defendant's employees conduct prompt and thorough investigations of theft of property belonging to guests, *id.* ¶ 34. As a result of these alleged failures, Plaintiff contends that (1) fine jewelry and valuables belonging to Plaintiff were stolen from the safe in her hotel room, *id.* ¶ 26, (2) one or more Palace employees committed and/or aided and abetted the theft of her property, *id.* ¶ 31, and (3) the Palace failed to conduct a prompt and thorough investigation of the theft such that Plaintiff has been unable to recover her property and suffered economic damages, *id.* ¶¶ 35–36. Plaintiff seeks compensatory damages and all attorney's fees and costs. *Id.* ¶ 37.

Defendant moved for dismissal solely on the basis of *forum non conveniens*, asserting that this action should be heard in a Spanish court. After conducting jurisdictional discovery, plaintiff insists that New York is the proper venue for this lawsuit and that a balancing of conveniences supports retention of the action here. Plaintiff does not dispute Defendant's claim that

the Palace's owner is Ciga and, indeed, two contracts she submits as exhibits expressly identify Ciga as such. *See* Maldonado Dec., Ex. B, Ex. G. However, she insists that it is proper to sue Starwood because the Palace's website, use of Defendant's trademark and participation in Defendant's preferred guest program indicate a "public association" between the two companies sufficient to overcome any "corporate and operational separateness" for jurisdictional purposes. *See* Plaintiff's Memo at 15–16 (quoting *Jayne v. Royal Jordanian Airlines Corp.*, 502 F.Supp. 848, 860 (S.D.N.Y.1980)).

In addition, Plaintiff asserts that she will be adding two additional United States parties, Westin International Services Company (WIS) (principal place of business in White Plains, New York) and Sheraton International, Inc. (principal place of business in Boston, Massachusetts), both of which are wholly-owned subsidiaries of Defendant, as parties defendant. Sheraton's location in the ownership chain leading to the Madrid hotel is set forth above. *See* Chelgren Aff. ¶ 5 Westin is not in that ownership chain, but plaintiff contends that WIS is "responsible for the day-to-day management and operations of the Palace" pursuant to a management agreement signed between it and Ciga (not, interestingly, defendant). *See* Plaintiff's Memo at 11; Maldonado Dec., Ex. B.

Defendant argues that plaintiff's characterization of Westin's relationship to Madrid hotel operations is "a gross distortion of the Agreement and without basis in the every day reality of the [Palace's] operations and oversight," *see* Defendant's Reply Memo at 3, and that WIS at no point during the relevant time provided services "with respect to daily operational issues such as security." *See* Dojlidko Reply Aff. ¶ 2. The issue is irrelevant at this point, since plaintiff has neither amended her complaint nor made a motion to add either Sheraton International or WIS as a party defendant. This court will not infer such a motion from a suggestion in a memorandum of law (*See* Plaintiff's Memorandum of Law at 11; *see also* Maldonado Dec., Ex. B, Ex. G).

Plaintiff does not suggest she will attempt to add Ciga as a party defendant, despite her tacit acknowledgment that Ciga actually owns the hotel where she was robbed.

### III. Discussion

Defendant's motion is a strange, indeed a counterintuitive, one. It, a corporation headquartered in White Plains, New York, seeks dismissal of an action brought in White Plains on the ground that it would be more convenient to litigate claims against it in Spain. *See* Defendant's Memo at 4–5.

When analyzed, it appears that defendant's real argument is that it ought not be a defendant at all—because it does not own or operate the hotel at which the theft allegedly occurred and because it cannot be held liable to plaintiff under any theory of vicarious liability—and that if plaintiff sued the right party (which defendant claims is Ciga), the suit would be more appropriately litigated in Spain. Indeed, while Defendant explicitly states, "The present motion does not seek dismissal on the grounds that Starwood is not the proper defendant," the brief goes on to say Starwood cannot be liable for Ciga's tort and "this action should proceed properly only against Ciga." Defendant's motion papers ignore entirely the question of where it would be most convenient to litigate the issues that are relevant to what appears to be its principal defense. This makes it a somewhat difficult motion to address. However, this court refuses to ignore the obvious—and the obvious is what disposes of this motion.

"The principle of *forum non conveniens* is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). In *Iragorri v. United Technologies Corp.*, 274 F.3d 65 (2d Cir. 2001), the Second Circuit adopted a three-part inquiry to govern analyses of motions to dismiss pursuant to *forum non conveniens*. *See Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 153 (2d Cir.2005); *see also Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 70 (2d Cir.2003); *DiRienzo v. Philip Services Corp.*, 294 F.3d 21, 28 (2d Cir.2002). "The defendant bears the burden to establish clearly each factor . . . and to demonstrate that the balance tilts strongly in favor of the purported alternative forum." *PT United Can Co., Ltd. v. Crown Cork & Seal Co., Inc.*, 138 F.3d 65, 74 (2d Cir.1998) (internal citations omitted).[1]

## A.  Level of Deference

The "first level of inquiry" in an analysis of a *forum non conveniens* challenge is "determining whether the plaintiff's choice [of forum] is entitled to more or less deference." *Pollux*, 329 F.3d at 70 (*quoting Iragorri*, 274 F.3d at 73). As the Second Circuit cautioned recently, district courts are to make this deference determination on the "flexible sliding scale" approved in *Iragorri*, where the general presumption in favor of a plaintiff's choice of forum may not control depending on the circumstances. *See Norex*, 416 F.3d at 154. This sliding scale encompasses considerations of forum-shopping and convenience and is evaluated under the totality of the circumstances. *Norex*, 416 F.3d at 154. "To facilitate totality review, *Iragorri* identified factors frequently relevant to determining whether a forum choice was likely motivated by genuine convenience[.]" *Id.* at 155.

The factors to be considered include: "the convenience of the plaintiff's residence in relation to the chosen forum, the availability of witnesses or evidence to the forum district, the defendant's amenability to suit in the forum district, the availability of appropriate legal assistance, and other reasons relating to convenience or expense." *Iragorri*, 274 F.3d at 72. On the other side of the equation, circumstances "generally indicative of forum shopping," *see Norex*, 416 F.3d at 155, include "attempts to win a tactical advantage resulting from local laws that favor the plaintiff's case, the habitual generosity of juries in the United States or in the forum district, the plaintiff's popularity or the defendant's unpopularity in the region, or the inconvenience and expense to the defendant resulting from litigation in that forum," *Iragorri*, 274 F.3d at 72.

A district court is not required to consider every single factor specifically in making this determination. *Norex*, 416

---

1. At the outset, I note that Plaintiff adopted for her analysis the factors and standards considered by courts in the context of a motion for transfer among the federal courts pursuant to 28 U.S.C. § 1404(a). The Second Circuit, in a case cited by Plaintiff, explicitly rejected granting "decisive weight" to § 1404 factors not present under traditional *forum non conveniens* analysis, because the two are different. *See Guidi v. Inter–Continental Hotels Corp.*, 224 F.3d 142, 146 n. 2, 148 (2d Cir.2000); *see also Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 253, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981) (noting § 1404 "was intended to be a revision rather than a codification" of *forum non conveniens*). To the extent, therefore, that Plaintiff's arguments can be restated and applied within the traditional *forum non conveniens* analysis and in light of the fact that the burden remains on Defendant throughout such analysis, I will examine her points. However, I do not rely on the transfer analysis, because I am prohibited from doing so by the Second Circuit.

F.3d at 155. Where the plaintiff's choice is determined to stem more from concerns of convenience, it is entitled to greater deference; where the choice indicates forum-shopping, it is entitled to less deference. *Iragorri*, 274 F.3d at 71–72. The Second Circuit has made clear that "a court should begin with the assumption that a plaintiff's choice of forum will stand unless the defendant can demonstrate that reasons exist to afford it less deference." *DiRienzo*, 294 F.3d at 28 (*citing Iragorri*, 274 F.3d at 70–71).

Here, Defendant attempts to meet its burden by asserting that Plaintiff's choice of forum is entitled to less deference because (i) she has chosen to bring her lawsuit in a forum that is not her home forum, and (ii) she and her claims have no "bona fide connection" to New York apart from Defendant's presence in New York. *See* Defendant's Memo at 5–6.

█ Defendant's first claim is without merit. The Second Circuit has noted that "in a *forum non conveniens* case involving a foreign court, the 'home forum' for the [U.S.] plaintiff is any federal district in the United States, not the particular district where the plaintiff lives." *Guidi v. Inter-Continental Hotels Corp.*, 224, F.3d 142, 147 n. 4 (2d Cir.2000) (internal citation omitted); *see also Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 102 (2d Cir. 2000) ("our caselaw and that of the Supreme Court has clearly and unambiguously established that courts should offer greater deference to the selection of a U.S. forum by U.S. resident plaintiffs"). Because Plaintiff is a citizen of the United States and Defendant here proposes as an alternative forum a foreign court, Plaintiff's choice of the Southern District counts *in favor* of retention. *See Wiwa*, 226 F.3d at 106.

█ Defendant's argument regarding the "bona fide connection" of Plaintiff or

her lawsuit with this District is addressed by applying the *Iragorri* factors outlined above. *See Iragorri*, 274 F.3d at 72. Almost all of the *Iragorri* factors present here weigh in favor of Plaintiff's choice of this forum. Plaintiff's residence in Puerto Rico is closer to New York than to Spain. Defendant is amenable to suit in this District, its home forum and the site of its principal place of business. *See Norex*, 416 F.3d at 155–56 (quoting *Pollux*, 329 F.3d at 74). Appropriate legal assistance is readily available to Plaintiff here, where her personal counsel practices in the Southern District of New York and he alleges his personal familiarity with this District constituted a "principal reason" for filing the lawsuit here. *See* Declaration of Roger Juan Maldonado in Opposition to Defendant's Motion to Dismiss ¶ 15. Plaintiff claims that she and her witnesses travel often to New York (*see* Plaintiff's Memo at 10) and while plaintiff does not mention it, plaintiff's witnesses are easily deposed via process issued by our sister United States District Court in San Juan.

Only one *Iragorri* factor even arguably weighs against granting substantial deference to Plaintiff's choice of this forum: Defendant's claim that it faces the increased inconvenience and expense of litigating here to the extent it must bring witnesses and evidence from Spain here to mount its defense. However, this argument begs the question. If defendant's defense is that plaintiff has not sued the proper party—Ciga—and that plaintiff has no claim against it, the witnesses and documents that will allow Starwood to assert such a defense will almost certainly be found at defendant's corporate headquarters in White Plains, not in a hotel in Madrid.

Because Defendant has failed to offer sufficient "proof that [P]laintiff's choice of a U.S. forum was motivated by forum-

shopping reasons, factors relating to convenience or expense generally weigh heavily in favor of [Plaintiff's] choice." *Pollux*, 329 F.3d at 71. Accordingly, I grant Plaintiff's choice of this forum significant deference.

## B. Existence of an Adequate Alternative

■ The next step in the *Gilbert* analysis is determining the existence of "a presently available alternative forum in which plaintiff can litigate its claim." *Norex*, 416 F.3d at 160; *see also Iragorri*, 274 F.3d at 73. Establishing the existence of an adequate alternative forum is a burden borne by a defendant. *USHA (India), Ltd. v. Honeywell Int'l, Inc.*, 421 F.3d 129, 135 (2d Cir.2005) (*citing Aguinda v. Texaco, Inc.*, 303 F.3d 470, 476 (2d Cir.2002)); *see also Wiwa*, 226 F.3d at 100. "An alternative forum is generally adequate if: (1) the defendants are subject to service of process there; and (2) the forum permits litigation of the subject matter of the dispute." *Bank of Credit and Commerce Int'l (Overseas) Ltd. v. State Bank of Pakistan, ("BCCI")* 273 F.3d 241, 246 (2d Cir. 2001) (internal quotation and citations omitted). " 'In rare circumstances, however, where the remedy offered by the other forum is clearly unsatisfactory, the other forum may not be an adequate alternative...' " *Aguinda*, 303 F.3d at 476–77 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 n. 22, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981)).

Defendant claims that Madrid, Spain is an adequate alternative forum because (i) Defendant stipulates in its memorandum to service of process for an action in Spain and (ii) an accompanying affidavit by a partner in a Madrid law firm ("Torres Affidavit") asserts that Spanish law permits litigation of negligence claims.

Federal courts have recognized Spain to be an adequate alternative forum for vari-

ous tort claims. See *Gomez v. Banco Bilbao Vizcaya, S.A.*, 1993 U.S. Dist. LEXIS 7566 at *7–8, 1993 WL 204990 at *6 (S.D.N.Y.1993) (Patterson, J.) (one tort and one contract claim); *see also Huertas v. Kingdom of Spain*, 2006 WL 785302, at *3, 2006 U.S. Dist. LEXIS 13203 at *8–9 (D.D.C. March 27, 2006) (fraud claim); *Fatkhiboyanovich v. Honeywell International Inc.*, 2005 WL 2099108, 005 U.S. Dist. LEXIS 23414 at *4–5 (D.N.J. Oct. 5, 2005) (negligence claim regarding training of air traffic system users); *Kryvicky v. Scandinavian Airlines System*, 807 F.2d 514 (6th Cir.1986) (wrongful death claim). Further, as Defendant's expert explains, the Civil Code in Spain recognizes a cause of action for negligence and a Spanish court will accept jurisdiction over a dispute such as this where the parties submit themselves for jurisdiction. See Torres Affidavit at 5–6; *see also Gomez*, 1993 WL 204990, at *3, 1993 U.S. Dist. LEXIS 7566 at *6–7 (finding Spain to be an adequate alternative forum where defendant agreed to submit to jurisdiction there and submitted affidavit from practicing attorney that plaintiff's claims would be recognized and documentary and testimonial evidence could be heard there). A claim for negligence under Spanish law presents an adequate, even if not identical, alternative. See *PT United Can Company Ltd.*, 138 F.3d at 74. Plaintiff offers no evidence that this case presents the "rare circumstances" in which the adequacy of the alternative forum "has not been established and cannot be presumed." See *Canadian Overseas Ores Ltd. v. Compania De Acero Del Pacifico S.A.*, 528 F.Supp. 1337, 1342 (S.D.N.Y.1982) (Lasker, J.) (finding Chilean court to be inadequate alternative forum where plaintiff raised serious questions about the judiciary's independence from the ruling military junta). Indeed, Plaintiff does not contest that her tort claims may be heard in a Spanish court.

*See Carey v. Bayerische Hypo-und Vere-insbank AG,* 370 F.3d 234, 237 (2d Cir. 2004); *see also Irwin v. ZDF Enterprises GmbH,* 2006 U.S. Dist. LEXIS 6156 at *40, 2006 WL 374960 at *13 (S.D.N.Y. 2006) (Sweet, J.).

But once again, Starwood's strange motion and the parties' analysis begs the question. The issue of Defendant's responsibility for whatever negligence led to the theft of Plaintiff's jewelry—issues of corporate law and vicarious liability—is uniquely American and intrinsic to the law of the polity under which the corporation was created. *See Fletcher v. Atex,* 68 F.3d 1451, 1456 (2d Cir.1995). The record is barren of any evidence that Spain would be an appropriate forum for litigating it. And this court cannot imagine that such issues—which are the essence of Starwood's defense—are not better litigated in an American court. Indeed, this court imagines (though I cannot be sure, since no one has bothered to brief the issue) that Spain would not be an adequate venue for litigating issues that turn on Maryland corporate law and limitations of liability in parent-subsidiary situations. It should go without saying that such issues are better left in an American court.[2]

## C.  Balancing Factors

In assessing the convenience of Plaintiff's chosen forum, this Court follows the mandate of the Second Circuit in balancing the factors identified by the Supreme Court in *Gilbert.* These factors are divided into two groups: the private interest factors reflecting the interests of the parties at bar and the public interest factors reflecting the interests of the public. I consider each in turn.

### 1.  Private Interest Factors

■ As listed by the Supreme Court, the private interest factors to be assessed include:

> [T]he relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and expensive.

*Gilbert,* 330 U.S. at 508–09, 67 S.Ct. 839. Defendant argues that (i) the sources of proof, including relevant witnesses and documents, are almost entirely in Spain, (ii) a view of the Palace is possible only at its location in Madrid, (iii) unwilling witnesses are beyond this Court's subpoena power, and (iv) Plaintiff cannot argue that Spain is an inconvenient forum where she describes herself as a regular visitor over a course of years. *See* Defendant's Memo at 7–9.

Plaintiff replies that (i) any documentary proof is easily transportable, (ii) Defendant has not shown that its witnesses cannot or will not be able to appear in New York while at least seven of Plaintiff's witnesses are residents of Puerto Rico who travel frequently to New York, (iii) any necessary view of the Palace can be secured through digital photographs and video, (iv) both parties have witnesses who are beyond the subpoena power of either forum, rendering

---

**2.** If I knew anything about a Spanish court's ability or desire to defer, or not to defer, to U.S. law on this subject, I might well be able to deny this motion on the ground that there is no adequate alternative forum. However, I will not infer that Spain would be hostile to a claim that an ultimate parent corporation many layers above the actual ownership or operation of the hotel at which the tort occurred is insulated from liability because, for example, it observes corporate formalities. Regardless of Spain's openness to such arguments, I am confident that they are better litigated in America.

that factor "a wash," (v) having a trial in New York would be more efficient because the action will be trial-ready here first, and (vi) the disparity of means between Defendant as an international company and Plaintiff as a private citizen supports finding New York to be the more convenient forum. *See* Plaintiff's Memo at 6–14.

First and foremost, all these arguments ignore the issue of Starwood's liability for negligence in a hotel owned by a Spanish corporation that is an indirect subsidiary of defendant. The evidence relevant to Starwood's corporate status, its relationship to WIS and/or Ciga, its adherence to corporate formalities, and the ownership structure of the Starwood empire is NOT in Spain. It is in New York—specifically in White Plains. Until those issues are resolved, nothing located in Spain would seem to be of the slightest relevance.

Second, to the extent that what happened in Spain becomes relevant, there is no necessity to try the matter in Spain. While this court cannot compel witnesses to produce documents or to testify in New York, Spain is a signatory to the Hague Convention on the Taking of Evidence Abroad in Civil and Commercial Matters (the "Hague Convention"), July 27, 1970, 23 U.S.T. 2555, 847 U.N.T.S. 231, and the protocols under that treaty can be used to obtain evidence that is fully admissible in a New York court of law. *See* Fed.R.Civ.P. 28(b). I note that this court similarly cannot compel plaintiff's witnesses to come to New York if they do not wish to do so, but that their evidence can be obtained in admissible form via subpoena emanating from the District of Puerto Rico. And no one has suggested that the number of Spanish documents that would have to be produced (by Ciga, and perhaps by the local constabulary, although the police reports would not be admissible in evidence to the extent they contain hearsay—as

most police reports do) is so great that transporting them to New York would be "oppressive" or "vexatious," *see DiRienzo*, 294 F.3d at 30, particularly given advances in electronic storage and transmission, *see Pollux*, 329 F.3d at 75.

In addition, while "The issue of accessibility of proof includes the consideration of whether documents are in another language and would have to be translated," *Nationsbank of Florida v. Banco Exterior de Espana*, 867 F.Supp. 167, 171 (S.D.N.Y. 1994), no one has suggested that this case will involve a substantial number of documents. So while it is true that a court's inability to compel production of police reports and other relevant evidence possessed by nonparty witnesses, or to compel the testimony of witnesses, augurs in favor of dismissal of this case in favor of a forum possessing such power, *see Murray v. British Broad. Corp.*, 81 F.3d 287, 295 (2d Cir.1996), this is less of a consideration in a case where the other forum is a Hague Convention member and where both sides' evidence is beyond the subpoena power of this court.

The view of the premises argument is silly. Both parties agree that photographs may be useful in providing such a view, *see* Defendant's Memo at 9; Plaintiff's Memo at 13, and Defendant has not indicated how an "inspection" of the Palace would be necessary or even helpful in showing evidence of the theft or of faulty procedures.

Finally, consideration of the "practical problems" concerning the ease, speed and expense of a trial do not point decisively in favor of sending this case to Spain. Courts have taken into consideration the "relative means" of the parties in assessing convenience of the chosen forum and the proposed alternative forum. *See, e.g., In re Ski Train Fire in Kaprun, Austria*, 230 F.Supp.2d 376, 389 (S.D.N.Y.2002). Here, Plaintiff asserts convincingly that she as a

"private citizen" is of lesser means relative to Defendant, an international company. *See* Plaintiff's Memo at 14. Defendant claims that Plaintiff has not shown that litigating in Madrid would be more expensive *for her* than continuing the lawsuit here, *see* Defendant's Reply Memo at 8, but the issue is to be analyzed with an eye toward the disparity of means *between the parties, see, e.g., Carey,* 370 F.3d at 238, and Defendant does not contest that it has more resources at its disposal for its defense than Plaintiff has in bringing her claims.

I have no idea whether this case will be "trial ready" before any case that she would have to file in Spain. Discovery in this case has so far been limited to jurisdictional issues and merits discovery is far from complete. Reliance on Hague Convention procedures means merits discovery will proceed more slowly than discovery in a case where all the evidence can be found in the United States. I have absolutely no idea whether Spain would even permit discovery in an action pending in its courts. As for getting the case to trial, this court has an extremely busy docket, with a backlog of civil cases to be tried. The record is devoid of any information about the caseload of Spanish courts.

There is one issue that weighs heavily in favor of dismissal—perhaps even heavily enough to offset the deference to be paid to Plaintiff's choice of forum. That is Defendant's ability—or, more precisely, inability—to implead Ciga as a party in this action. The Second Circuit has considered inability to implead a third party defendant in *forum non conveniens* analysis, despite the fact that this factor does not appear on *Gilbert*'s enumerated list. *See Allstate Life Ins. Co. v. Linter Group Ltd.,* 994 F.2d 996, 1002 (2d Cir.1993) (quoting *Piper,* 454 U.S. at 259, 102 S.Ct. 252);

*Fitzgerald v. Texaco, Inc.,* 521 F.2d 448, 453 (2d Cir.1975).

However, until the issue of the named defendant's lack of liability as a matter of corporate law is established, there is no need to implead anyone—making consideration of this issue premature. If Starwood is unable to obtain dismissal of the complaint on the ground that it, as the ultimate parent in a lengthy corporate chain, is not liable to plaintiff as a matter of law, I would revisit the issue of *forum non conveniens* in the context of whether Ciga can be sued in the United States—another issue the parties have not adequately briefed.

### 2. Public Interest Factors

The public interest factors to be assessed include (i) administrative difficulties caused by court congestion, (ii) the local interest in having localized controversies decided at home, (iii) the burden of jury duty on a community unrelated to the litigation, and (iv) the appropriateness of having a court familiar with the governing law adjudicate the dispute. *See Gilbert* at 508–09, 67 S.Ct. 839.

As mentioned above, I cannot make any determination about the issue of court congestion. Nor can I opine on the "burden" to the jurors in this district, except to say that this seems at best a makeweight argument.

In terms of local interest, I must return to the point I have made repeatedly—that depends on whether we are determining Starwood's liability as a matter of corporate law or discussing the underlying tort. I have little doubt that Spain has a greater interest in regulating the conduct of its innkeepers than does New York. But I am equally certain that the United States, having created the corporation as a legal person and having endowed it with the ability to limit its liability for the acts and

omissions of its subsidiaries and contractors, has a greater local interest in litigating issues relating to the propriety of naming Starwood as a defendant than does Spain.

As for choice of law, *see Pollux*, 329 F.3d at 76, the same thing can be said. Choice of law is important because courts have an "interest in avoiding the application of foreign law" by either forum. *DiRienzo*, 294 F.3d at 31. Defendant argues that Spanish law would apply in this tort action due to New York's choice-of-law rules and that a Spanish court would therefore be a more convenient forum for hearing Plaintiff's claims. *See* Defendant's Memo at 10–11. Plaintiff does not address choice-of-law at all.

Defendant is correct in arguing that a federal court sitting in diversity New York is bound to apply New York's choice-of-law rules. *See GlobalNet Financial.Com, Inc. v. Frank Crystal & Co.*, 449 F.3d 377, 382 (2d Cir.2006) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

Defendant is also correct that, under choice-of-law analysis in New York, the relevant analytical approach in tort actions is the "interest analysis." *See GlobalNet*, 449 F.3d at 384 (*quoting Schultz v. Boy Scouts of Am., Inc.*, 65 N.Y.2d 189, 197, 480 N.E.2d 679, 491 N.Y.S.2d 90 (1985)). The "law of the jurisdiction having the greatest interest in the litigation will be applied," *Schultz*, 65 N.Y.2d at 197, 491 N.Y.S.2d 90, 480 N.E.2d 679, depending on whether the tort concerns conduct regulation or loss allocation, *see Grosshandels-Und Lagerei–Berufsgenossenschaft v. World Trade Ctr. Prop., LLC*, 435 F.3d 136, 139 (2d Cir.2006). "If conflicting conduct-regulating laws are at issue, the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders." *Cooney v. Osgood Mach., Inc.*, 81 N.Y.2d 66, 72, 612 N.E.2d 277, 595 N.Y.S.2d 919 (1993)(quoted in *GlobalNet*, 449 F.3d at 384). Thus, it is likely that a New York court would apply Spanish law to determine the duty of an innkeeper in Madrid to his guests.

However, New York would almost certainly not apply Spanish law in deciding whether a Maryland corporation headquartered in New York could be held liable for a tort committed in a hotel owned by an indirect Spanish subsidiary. And, "While reluctance to apply foreign law is a valid factor favoring dismissal under Gilbert, standing alone it does not justify dismissal." *Boosey & Hawkes Music Publrs., Ltd. v. Walt Disney Co.*, 145 F.3d 481, 492 (2d Cir.1998) (citing *Piper*, 454 U.S. at 260 n. 29, 102 S.Ct. 252). A federal court "must guard against an excessive reluctance to undertake the task of deciding foreign law, a chore federal courts must often perform." *Manu International, S.A. v. Avon Products, Inc.*, 641 F.2d 62, 68 (2d Cir.1981) (citations omitted). This court has applied the law of many foreign jurisdictions when required to do so, and the task would be far from impossible here.

## IV. Conclusion

In sum, I conclude that there is no reason to dismiss this case on *forum non conveniens* grounds now. I further conclude that the proceedings should be bifurcated, and that the issue of Starwood's liability as a matter of corporate law should be litigated to judgment before the parties proceed to discovery on the merits. If the claims against Starwood are dismissed because it is not the proper party defendant, plaintiff can go wherever she has to in order to bring her claim against a proper party—and if that be Spain, then Spain it will have to be. If, on the other hand, Starwood can be held liable for any defalcations by Ciga (or by WIS, should

plaintiff ever take the trouble to amend her complaint, which she has not done to date), then the court will revisit whether the case should be dismissed in favor of a foreign forum because of Ciga's inability to be sued in the United States. The Management Agreement between Ciga and WIS and the contract between Ciga and Sheraton both describe Ciga as "a Belgian company." *See* Maldonado Aff., Ex. B, Ex. G. However, should defendant, or any additional defendants who might be added as parties, choose to raise this issue again, I would decline to grant a motion to dismiss on *forum non conveniens* grounds unless the moving defendants were either amenable to suit in Spain or expressed a willingness to be sued there.

The motion is denied without prejudice to its renewal after the court has addressed whether Starwood (or any other party who may be added as a defendant) is potentially liable for a tort committed by whoever is responsible for ownership and operation of the Palace Hotel in Madrid.

This constitutes the decision and order of the court.